State v. Dubray.

No. 27,150.

THE STATE OF KANSAS, *Appellee*, v. LAWRENCE DUBRAY, *Appellant*.

SYLLABUS BY THE COURT.

JUVENILE DELINQUENTS—*Trial and Commitment—Jurisdiction of Courts*. On September 28 a boy who became sixteen years old on June 3 was arrested for statutory rape committed on May 27, all in the same year, and was brought before a justice of the peace. At a preliminary examination the boy's age was disclosed, and the justice of the peace transferred the case to the juvenile court. The juvenile court referred the case to the district court for trial, a jury impaneled by the district court found the boy guilty, and the district court sentenced him on the verdict to the reformatory. *Held*, the district court had no jurisdiction to pronounce sentence on the verdict.

Appeal from Crawford district court, division No. 1; DANIEL H. WOOLLEY, judge. Opinion filed November 6, 1926. Reversed.

*Arthur Fuller*, of Pittsburg, for the appellant.

*Charles B. Griffith*, attorney-general, *Roland Boynton*, assistant attorney-general, and *Ray H. Preyer*, county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: This appeal was taken to determine validity of sentence of a boy over sixteen years of age to the reformatory, by the district court, on a verdict of guilty of an act of delinquency committed before the boy was sixteen years old, which if committed by an adult would be a felony.

Lawrence Dubray was born on June 3, 1909. The verdict was that he was guilty of statutory rape committed on May 27, 1925. On September 28, 1925, complaint was made before a justice of the peace, and a warrant of arrest was issued. On the same day the boy was arrested, and was taken before the justice of the peace for preliminary examination, in accordance with the procedure in felony cases. At the preliminary examination, held on October 8, 1925, his age was disclosed. The justice of the peace held he had no jurisdiction to proceed further, and transferred the case to the juvenile court. On January 2, 1926, the judge of the juvenile court sent the case to the district court for disposition according to law. The subsequent proceedings in the district court, including trial, verdict and sentence, conformed to the mode in felony cases. Authority

Delinquent, 18 C. J. p. 475 n. 84. Infants, 31 C. J. pp. 989 n. 70, 1101 n. 45, 1104 n. 78, 1106 n. 32, 1109 n. 27, 1110 n. 42 *et seq*.

of the district court to impose sentence on the verdict was duly challenged. Validity of the sentence depends on the meaning of the act of March 18, 1905, entitled "An act to establish a juvenile court and provide for the care of dependent, neglected and delinquent children." (Laws 1905, ch. 190; R. S. 38-401 to 38-415.)

As early as 1881 the legislature differentiated the disciplinary treatment which boys under the age of sixteen, convicted of crime punishable by imprisonment, should receive, from the punishment accorded criminals generally, by establishing the state industrial school for boys, and authorizing the courts, at their discretion, to sentence to that institution. (Laws 1881, ch. 129; R. S. ch. 76, art. 21.) In 1889 a similar institution was provided for girls. In 1901 the state industrial reformatory was established, and males between the ages of sixteen and twenty-five, convicted of offenses punishable by imprisonment in the penitentiary, might be sentenced to the reformatory. (Laws 1901, ch. 355, R. S. ch. 76, art. 23.) The industrial-school acts were based on the principle, then gaining recognition, that the child offender should not be classified as a criminal. The reformatory act established a penal institution in which young offenders might be segregated, and discipline appropriate to their personalities might be administered.

In 1899 the parent juvenile-court law was enacted by the state of Illinois, under the title, "An act to regulate the treatment and control of dependent, neglected and delinquent children." (Laws 1899, p. 131.) This statute, amended in 1901, furnished a model for legislation of other states enacted in deference to the juvenile-court principle. Subsequent to 1899 and previous to 1905, juvenile-court statutes were enacted in Wisconsin (Laws 1901, ch. 90; Laws 1903, ch. 97); Ohio (Laws 1902, p. 785; Laws 1904, p. 561); Colorado (Laws 1903, ch. 85 and ch. 86); Indiana (Laws 1903, ch. 237); New Jersey (Laws 1903, ch. 219); Pennsylvania (Laws 1903, No. 205); Iowa (Laws 1904, ch. 11). These statutes differed from the Illinois prototype and from each other. When the Kansas legislature was framing its juvenile-court law it had before it these enactments. It drew freely upon them, but in its final form the statute differed from each of its predecessors in important particulars. Points of resemblance and difference serve to bring out the meaning of those provisions of the Kansas law material to the present controversy.

The juvenile-court act established in each county of the state a court to be known as the juvenile court, whose jurisdiction pertains

to the care of dependent, neglected and delinquent children. The probate judge is the judge of the juvenile court of his county, and the court has jurisdiction of all cases concerning dependent, neglected and delinquent children in the county. (R. S. 38-401.) The act contains the following definition: "The words 'delinquent child' shall include any child under the age of sixteen years who violates any law of this state or any city, town or village ordinance; or. . . ." (R. S. 38-402.) The act provides for appointment of probation officers (R. S. 38-403), and for initiation of delinquency proceedings by petition and summons (R. S. 38-404 and 38-405). When a child under the age of sixteen years is arrested for an offense punishable under the criminal law, he shall not be taken before a justice of the peace, police magistrate, or judge of any other court having jurisdiction of the offense, but shall be taken before the juvenile court; and if the child has been taken before a justice of the peace, police magistrate, or judge of other court, the case must be transferred to the juvenile court, which shall then proceed as if the case had been commenced in the usual manner. (R. S. 38-411.) The court is open at all times for the transaction of business, and it proceeds in a summary manner. The hearing of any case may be continued from time to time, and the court may make provision for custody of the child pending hearing and final disposition. This custody may be parental in character. R. S. 38-406 provides as follows:

"Pending a hearing, no child shall be committed to a jail or police station, except, in case of felony, the judge, if he deems it advisable, may commit said child to jail until the trial and final disposition of the case; but when other provision shall not have been made for its care and custody, the court shall direct it to be kept in some suitable place provided by the county outside of a jail or police station."

On final disposition of the case, the court may commit a delinquent child to the care and control of a probation officer, or may allow it to remain in its own home subject to visitation, or may authorize it to be placed in a suitable family home, or may authorize it to be boarded out in some suitable family home, or may commit it to a suitable institution for the care of delinquent children, or to some duly accredited institution, or to some discreet person. The statute, however, contains the following:

"Provided, That no child under the age of sixteen years shall be committed to the state reformatory, and in no case shall a child be committed beyond his or her minority." (R. S. 38-409.)

State v. Dubray.

An appeal lies to the district court from a final order of commit-
ment made by the juvenile court, and on a final hearing in the dis-
trict court the case is disposed of in the spirit of the act and by
exercise of the power and discretion lodged in the juvenile court.
(R. S. 38-412.)

The act contains the following provisions:

"In all cases of felony, the judge of the juvenile court may remand the
person apprehended to the district or county court for trial." (R. S. 38-412.)

"All punishments and penalties imposed by law upon persons for the com-
mission of offenses against the laws of the state, or imposed by city ordinances
for the violation of such ordinances in the case of delinquent children under
the age of sixteen years, shall rest in the discretion of the judge of the juve-
nile court, and execution of any sentence may be suspended or remitted by
said court." (R. S. 38-414.)

"This act shall be liberally construed, to the end that its purposes may be
carried out, to wit, that the care, custody and discipline of a child shall ap-
proximate, as nearly as may be, proper parental care; and in all cases where
the same can be properly done, that a child may be placed in an approved
family home, by legal adoption or otherwise. And in no case shall any pro-
ceedings, order or judgment of the juvenile court, in cases coming within the
purview of this act, be deemed or held to import a criminal act on the part of
any child; but all proceedings, orders and judgments shall be deemed to have
been taken and done in the exercise of the parental power of the state." (R.
S. 38-415.)

In the states of Colorado, Illinois, Iowa and Ohio delinquency
was defined to include violation of any state law; but in Iowa the
juvenile court act did not apply to children under the age of six-
teen years charged with commission of offenses punishable under
the criminal law with death or life imprisonment.

In Illinois the circuit and county courts were given jurisdiction of
all delinquencies, without distinction between a violation which, if
committed by an adult, would constitute felony, and a violation
which would constitute misdemeanor. Section 9 of the act of 1899
provided that if a child were found guilty of "any criminal offense,"
he might be committed, at the court's discretion, to the state re-
formatory, a penal institution. If sentenced to an institution in
which adult convicts were confined, the child was to be completely
segregated from them. In 1901 section 9 was amended by dropping
out authority to confine in the reformatory and by increasing the
list of parental institutions to which delinquent children might be
committed. The result was that the juvenile court had jurisdiction
of any juvenile "criminal offense," and punishment could not be

penal in character. An amendment not available when the Kansas act was framed, indicating clearly the previous scope of the law, provided that "the court may permit a delinquent child to be dealt with under the criminal laws or municipal ordinances."

In Wisconsin the statute of 1901 defined delinquency to include any child under the age of sixteen years who violated any law of the state, the penalty for which was not imprisonment in the state prison. If a child under the age of sixteen years were arrested, charged with violation of law the penalty for which was imprisonment in the state prison, a preliminary examination was held, as in criminal cases. If a finding of probable cause were made, the child was held to the juvenile court for trial, and all provisions of law relating to proceedings in criminal cases in circuit courts were made applicable to the trial, sentence and commitment of the offender. The court, however, might in its discretion commit the offender to parental custody of various kinds. In 1903 the previous act was amended to provide that, on finding of probable cause, a magistrate might commit the child for trial to the juvenile court or to the current term of the court having jurisdiction of such cases. All provisions of law relating to proceedings in criminal cases in circuit courts were made applicable to the trial, sentence and commitment, but the court might, at its discretion, commit the offender to parental custody.

In Indiana jurisdiction over offenses punishable with death or imprisonment for life was not conferred on the juvenile court, but the juvenile court might sentence to the reform school.

In New Jersey jurisdiction over the crimes of murder and manslaughter was not conferred on the juvenile court. The juvenile court might refuse to hear other charges of crime, and send the complaint to the grand jury to be disposed of according to law. The delinquent was likewise accorded the privilege, if he so desired, of being dealt with in the usual course of law.

In Iowa the statute enlarged the power of district courts to include trial of delinquency cases. The procedure was by petition and summons. Trial in a summary manner occurred on return of the summons, except that if the charge were commission of an offense not punishable by death or life imprisonment, the court might, and on demand was required, to place the child on trial for the offense. When any boy or girl was found guilty of commission of a crime not punishable by death or life imprisonment, the court might, in

its discretion, make parental orders instead of entering judgment on the conviction.

Under the Colorado statutes criminal proceedings against delinquent children were permissible. Under the Pennsylvania statute ordinary criminal proceedings might be converted at various stages into delinquency proceedings.

The Ohio statute of 1902 applied to a single county. The statute of 1904 preserved the local law, but extended the juvenile-court system to all counties of the state. The Illinois model was followed quite closely in form and substance. In 1908 the law was revised, and the act of 1904 received a distinct legislative interpretation by amendment. Sections 38 and 39 of the act of 1908 provided that a delinquent child charged with felony might be bound over to the court of common pleas, and thereafter the same proceedings should be had as were authorized for the indictment, trial, judgment and sentence of any other person charged with felony.

In the statutes enacted previous to 1905 various provisions were made for custody before hearing, and pending final disposition, of a child charged with delinquency consisting of violation of law. These provisions ranged from commitment to jail, to custody free from implication of criminality, and to characteristic parental custody. It is interesting to note that the constitutional privilege of trial by jury troubled the framers of the early juvenile-court acts. In Illinois a child charged with delinquency might demand a jury of six, or the judge might of his own motion order a jury of six to try the case. In New Jersey it was made obligatory for the court to instruct a boy called on to plead, that he had a right to indictment by a grand jury and to a jury trial. The statutes enacted previous to 1905 supplied the Kansas legislature with other data for preparation of a juvenile court act, but it is not necessary to analyze them further.

In defining delinquency the Kansas legislature utilized the Illinois model and did not except law violation of felony grade. Violations of law which would be felonious on the part of adults were not overlooked. Specific reference to felony cases appears in two sections of the statute. In felony cases the delinquent may be committed to jail pending hearing. (R. S. 38-406.) The context discloses full jurisdiction of the juvenile court over felony cases, including continuances, trial and final disposition. In all cases of felony the

juvenile court may send the delinquent to the district court for trial. (R. S. 38-412.) The provision is permissive and not mandatory, and the juvenile court may hear felony cases.

As indicated, an appeal to the district court may be taken from a final order of commitment made by the juvenile court. (R. S. 38-412.) On appeal, the district court acts as a juvenile court and not as a criminal court. (R. S. 38-412.) In Illinois and other states a court having criminal jurisdiction was designated to act as the juvenile court. In such states appeal in juvenile cases would serve no purpose. In this state the granting of an appeal was in accord with the established policy to allow appeals from action of the probate court or judge in other matters; but beyond that, privilege to appeal was doubtless conferred because the juvenile court had jurisdiction over all juvenile violations of law, including felonies. Although the district court is the court of original jurisdiction for trial of felonies, provisions found in the laws of other states for application, or for alternative application of criminal procedure, were omitted from the Kansas statute. A case appealed from the juvenile court is to be heard and is to be disposed of in the spirit of the juvenile-court act, which forbids that proceedings shall import criminality; and is to be heard and disposed of by exercise of the power and discretion given the juvenile court, which is exercise of the parental and not the punitive power of the state. (R. S. 38-412 and 38-415.)

The statute provides that in all felony cases the judge of the juvenile court may remand the person apprehended to the district or county court for trial. (R. S. 38-412.) The word "remand" was improperly used. The district court could not under any circumstances gain previous possession of an untried case, and consequently the case could not be sent back to it. The words "or county court" had no meaning, because there were no county courts in Kansas. There were no "villages" (R. S. 38-402) in Kansas. Use of these terms and some others indicates adaptation of some form of juvenile-court bill which did not originate in the legislature. The statute means that the judge of the juvenile court may refer all cases of felony to the district court for trial. A trial, whether civil or criminal, is a judicial examination of the issues in a case. Rendition of judgment and execution of judgment are distinct procedural acts, different in kind from determination of issues. In this instance authority to

State v. Dubray.

perform those procedural acts was not granted in terms to the district court, and all the indications are that such authority was deliberately withheld.

Statutes of other states making criminal proceedings applicable to cases of delinquency constituting crime, expressly extend the procedure to trial, sentence, and commitment. Likewise, in harmony with juvenile court theory, statutes of other states provide that, at the discretion of the criminal court, sentence such as the juvenile court could pronounce may be imposed, instead of sentence under the criminal law. None of these provisions was utilized in the Kansas statute, and notwithstanding the fact that, in the preceding sentence of the same section, jurisdiction of the district court on appeal was expressly extended to final disposition, jurisdiction acquired by reference was limited to trial.

As indicated, it is optional with the juvenile court whether a felony case shall be referred to the district court for trial. The juvenile court of Crawford county might have tried Lawrence Dubray. Privilege to appeal to the district court from a final order of commitment made by the juvenile court is given to the child for protection of its liberty and other personal interests. Privilege to appeal from such an order is given to the child's parent or guardian for the protection of his property interest in the child's earnings and other personal interests. These are important interests. They are involved when the juvenile court chooses to refer a felony case to the district court for trial, and it is not conceivable that the district court acquires by mere implication greater power through exercise of option on the part of the probate judge than it does by express grant through exercise of an interested person's privilege to appeal. R. S. 38-415 provides that in no case shall any proceeding, order or judgment of the juvenile court be deemed or held to import a criminal act on the part of any delinquent. Whether the same act shall import criminality or shall not import criminality does not depend on choice of the probate judge with respect to method of trial.

The district court is the best agency known to our law for determination of guilt or innocence of a person charged with felony. The juvenile court is the best agency known to our law for determining what provision shall be made for delinquent children. R. S. 38-414 gives the juvenile court power to suspend or to remit execution of "any sentence." After trial, conviction, sentence and com-

mitment, whether in juvenile or in district court, the juvenile court is still charged with responsibility for the welfare of the child. The juvenile court was given the privilege of resorting to the district court for performance of a function which that court has superior capacity to perform. The juvenile court remains charged with performance of the function which it has superior capacity to perform.

R. S. 38-414, providing that punishments and penalties imposed on adults for violations of law shall in the case of delinquent children rest in the discretion of the judge of the juvenile court, grants no power to the district court except indirectly in those cases in which the district court on appeal acts as a juvenile court. In such cases, imposition of a penal sentence is expressly forbidden by R. S. 38-409 relating to disposition of delinquents:

"*Provided,* That no child under the age of sixteen years shall be committed to the state reformatory, and in no case shall a child be committed beyond his or her minority."

It follows from what has been said that the order of the juvenile court transferring the case to the district court for disposition according to law, merely had the effect of referring the issue of delinquency to the district court for trial. Jurisdiction of the district court ceased with return of the verdict, and it had no authority to pronounce sentence on the verdict. The juvenile court necessarily takes cognizance of the result of the reference, the verdict of guilty, and may proceed as if it had determined for itself the question of delinquency.

The state contends sentence by the district court was valid because the delinquent had arrived at the age of seventeen when sentence was pronounced. The case of *State v. Davidson,* 71 Kan. 494, 80 Pac. 945, is cited. The offense charged in the Davidson case was committed in 1903, the trial occurred in 1904, the appeal was taken on October 4, 1904, and the case was finally submitted to this court for decision on April 3, 1905, only sixteen days after the date on which the juvenile court act took effect (March 18, 1905). Therefore, the juvenile court law was not involved. The question in the case was whether the defendant was entitled to six peremptory challenges of jurors, as he demanded, or four challenges, as he was allowed. The decision turned on the nature of the offense charged. The offense charged was rape, which is a felony punishable by imprisonment in the penitentiary. At the time of the conviction,

State v. Dubray.

the defendant was under sixteen years of age, and could not be sentenced to the penitentiary. The nature of the offense governed, however, and not the punishment mitigated in deference to age. In this connection the court said punishment to be inflicted depends on age at time of conviction, and not on age at the time the offense was committed. The case was well decided under the law as it then stood, but it has no application to the present controversy. Under the juvenile court act, nature of offense determines nature of discipline.

The legislature intended that police officers, constables and sheriffs, police courts, justices of the peace and district courts, and everybody else concerned with the consequences of breaches of the criminal law, should get it completely out of their minds that a delinquent child is to be regarded or treated as a criminal. A violation of law, which if committed by an adult would be rape, is not a crime if committed by a boy under the age of sixteen years. It is an act of delinquency. Whether an act constitute delinquency or crime is determined by the factor of age. So determined, the character of the act is fixed, remains constant, and, if delinquency, does not enlarge to crime by lapse of time. The juvenile court has exclusive jurisdiction over delinquencies (*State v. Dunn*, 75 Kan. 799, 90 Pac. 231; *Swehla v. Malone*, 114 Kan. 712, 220 Pac. 299); and the juvenile court does not lose jurisdiction by delay in obtaining personal jurisdiction over the delinquent, whether the delay be occasioned by failure to discover the delinquency, neglect or inability promptly to institute delinquency proceedings, or deliberate postponement of delinquency proceedings with a view of invoking the criminal law.

"The statute defines a 'delinquent' child to be one who, of the ages specified, commits any of the acts named, including the crime charged here, and then vests in county courts of the state exclusive jurisdiction to try such 'delinquent' children. They become 'delinquent' children by the commission of the act denounced, when the acts are committed, and the jurisdiction then vests exclusively in the county court, which court having thus acquired exclusive jurisdiction cannot be ousted by its failure to act. The very purpose of this law, as has been declared by this court upon more occasions than one, is to provide for the protection and care of juvenile offenders in a humanitarian effort to prevent them from becoming outcasts and criminals, rather than to inflict punishment for their delinquencies. To hold that the officers charged with the execution of the law may defer action until the offending child has passed the age thus protected by the statute, and then prosecute him as a

criminal and not as a juvenile, would defeat the very purpose of the law, and cannot be sanctioned." (*Mattingly v. Commonwealth,* 171 Ky. 222, 224.)

An analogous subject is specifically covered by a statute enacted in 1907, providing that when an offender before the age of sixteen has been brought before the juvenile court, jurisdiction of the court shall not expire on account of the child's arriving at the age of sixteen years. (R. S. 38-423.)

The state makes a contention that the interpretation adopted would prevent the juvenile court from committing a delinquent who, at the time of commitment, had passed the age of sixteen, to a suitable institution, such as the industrial school for boys. The statute creating the industrial school for boys was enacted in 1881. It contained provision for committing to the institution any boy under the age of sixteen years, convicted of an offense punishable by imprisonment, or liable to imprisonment under any law of the state. After enactment of the juvenile-court law there could be no conviction or criminal punishment of boys under the age of sixteen, except inmates of institutions, to whom the juvenile-court act did not apply (R. S. 38-402), and the industrial-school act is to be interpreted accordingly. As an institution for the care of delinquent children the school is designated by the provision in the juvenile-court act, "or the court may commit the child to a suitable institution for the care of delinquent children." (R. S. 38-409.)

The judgment of the district court is reversed, and the cause is remanded with direction to set aside the sentence.