David **SUAREZ**, Petitioner,

v.

**Fred T. WILKINSON, Warden United States Penitentiary, Lewisburg, Pennsylvania, Respondent.**

**No. 296.**

United States District Court
M. D. Pennsylvania.

July 18, 1955.

David Suarez, pro se.

J. Julius Levy, U. S. Atty., Edwin M. Kosik, Asst. U. S. Atty., Scranton, Pa., for respondent.

FOLLMER, District Judge.

An application in forma pauperis for a writ of habeas corpus has been filed by the petitioner who is now serving his sentence at the United States Penitentiary, Lewisburg, Pennsylvania. He alleges that he

"was duly arrested on or about The (sic) seventh day of December, Nineteen and fifty one. (sic) On a Charge of violating the Federal Probation Act. By virtue of Civil proceding (sic) had in Court and was then and there, committed to the Federal Correctinal (sic) Institution, at Englewood, Colorada for boys. The proceding (sic) being Civil Nature only and not Criminal, therefore the committment (sic)

---

5. Plaintiffs cite Regents of University System of Georgia v. Page, 5 Cir., 81 F.2d 577.

6. Dyer v. Gallagher, 6 Cir., 203 F.2d 477, 479.

that holds Petitioner in the Northeastern Penitentiary at Lewisburg, Pennsylvania, is (Void). Being no committment (sic) at all."

A Rule to Show Cause issued in order that the record might be supplemented with the docket entries, information and judgment and commitment in the proceedings pursuant to which petitioner is now imprisoned.

Having been arrested for having in his possession and having transported in interstate commerce an unregistered shotgun having a barrel less than eighteen inches in length he was brought before the United States District Court for the Western District of Missouri on an information charging him with having committed an act of juvenile delinquency. He consented to be prosecuted by information on a charge of juvenile delinquency and having plead guilty, on November 16, 1951, imposition of sentence was suspended and he was placed on probation for a period of two years. The opportunities of probation were apparently misconstrued by this petitioner since on December 10, 1951, a warrant of arrest issued to the Probation Officer and on January 11, 1952, the probation was revoked and he was "committed to the custody of the Attorney General or his authorized representative for imprisonment until he shall attain the age of twenty-one (21) years." He was originally committed to the Federal Correctional Institution at Englewood, Colorado, but it would appear that he still lacked the good common sense to avail himself of the opportunities for readjustment since it became necessary for the Attorney General to transfer him to a penitentiary.

It is his position that because 18 U.S. C. § 5032 provides:

"In such event the juvenile shall be proceeded against by information and no criminal prosecution shall be instituted for the alleged violation",

the proceeding is civil in nature and bars his imprisonment in a penitentiary.

As was stated by Judge Yankwich in George v. United States, 9 Cir., 196 F.2d 445, 453,

"* * * Until the rise of juvenile delinquency and juvenile courts, minors everywhere were subjected to the penalties of all criminal statutes, even those relating to murder, * * *.

"Juvenile statutes allowing special treatment of offenders are a modern innovation. The first law creating a juvenile court was enacted by the Legislature of Illinois and went into effect on April 14, 1899. (Thorsten Sellin, in Foreword to 'Juvenile Delinquency', The Annals of the American Academy of Political and Social Science, No. 261, January 1949, pp. VII and VIII; Paul W. Tappan, Juvenile Delinquency, 1949, Chapter 8, pp. 167–194.) They were introduced into federal criminal jurisprudence by the Act of January 16, 1938, 52 Stat. 764, Chapter 486."

The original Juvenile Delinquency Act of 1938, 18 U.S.C. § 291 et seq., was incorporated in the 1948 codification, 18 U.S.C. § 5031 et seq. with some changes not material here. The purpose of this Act was to spare youths from having to bear the stigma of a criminal for the rest of their lives because of a violation of the law and to encourage such youths, by proper supervision and changed environment, to become law-abiding citizens. The Act was enacted with the realization that persons under the age of eighteen do not have mature judgment and may not fully realize the nature or consequences of their acts.[1] The right to the benefits of the Act is not absolute. The Act provides, inter alia, 18 U.S.C. § 5032,

"A juvenile alleged to have committed one or more acts in violation

---

1. United States v. Fotto, D.C.S.D.N.Y., 103 F.Supp. 430; United States v. Webb, D.C. W.D.Okl., 112 F.Supp. 950.

of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise."

Having been accorded the benefit of the Act he cannot dictate the Court's determination as to the proper remedy to be applied in his case. It is further provided by the Act, inter alia, 18 U.S.C. § 5034,

"If the court finds a juvenile to be a delinquent, it may place him on probation for a period not exceeding his minority, or commit him to the custody of the Attorney General for a like period.

"Such commitment shall not exceed the term which might have been imposed had he been tried and convicted of the alleged violation."

In the present case petitioner was originally placed on probation. It became necessary to revoke the probation in accordance with the provisions of the Probation Act, 18 U.S.C. § 3651 et seq. and he was then committed to the custody of the Attorney General. The Juvenile Delinquency Act does not take away from the Attorney General any of his discretion in connection with such commitment. It does add further discretionary powers in the provision that, 18 U.S.C. § 5034,

"The Attorney General may designate any public or private agency or foster home for the custody, care, subsistence, education, and training of the juvenile during the period for which he was committed."

In order to provide as much flexibility as possible, correctional institutions and "training schools" have been provided for those juveniles who may benefit thereby. Custody is an essential feature

in those cases where parole is not feasible and the nature of such custody, in line with the juvenile's reaction thereto, must necessarily be left to the discretion of those in charge of the problem of rehabilitation. The power of the Attorney General to designate the place of confinement [2] has not been abrogated in any respect by the Juvenile Delinquency Act.

Petitioner's application for a writ of habeas corpus must be denied.