**UNITED STATES of America**

v.

**George Junior McCOY, Robert Carl Parker, Lewis Cagle, Jr.**

**Cr. No. 12583.**

United States District Court
M. D. Pennsylvania.

April 2, 1957.

---

Robert J. Hourigan, U. S. Atty., Scranton, Pa., for plaintiff.

Lewis Cagle, Jr., Pro se.

FOLLMER, District Judge.

Lewis Cagle, Jr., who is now serving a sentence imposed by this Court, has filed a "Motion To Vacate Sentence." Cagle was jointly indicted with George Junior McCoy and Robert Carl Parker on December 1, 1954, charged with the murder, at the United States Penitentiary, Lewisburg, Pennsylvania, of one William Walter Remington. All three defendants and the victim were inmates of the penitentiary.

A statement of certain facts pertinent to this motion, as known to this Court and fully substantiated by the record, is in order. Six attorneys were appointed by the Court with two assigned to each defendant. The record speaks eloquently of the sincere efforts made by counsel on behalf of these defendants. When the defendants were originally before the Court for arraignment on December 13, 1954, counsel requested a postponement of arraignment [1] to enable them to consider and present preliminary motions. This was followed by a barrage of motions, including, inter alia, motion to inspect the Grand Jury minutes; motion to dismiss the indictment; motion to examine, inspect and copy medical and psychiatric records; motion to inspect scene of crime and interview witnesses in penitentiary; motion to examine and copy statements made by defendants, and motion for bill of particulars. Extensive argument was had on January 24, 1955, and resumed on February 3, 1955, followed by arraignment and pleas of not guilty.[2] On May 6, 1955, counsel for all defendants, with defendants present, moved to change the pleas to guilty of murder in the second degree, which was acceded to by the prosecution. Each defendant indicated that he was fully aware of what he was doing.[3] On May 26,

---

1. Transcript of proceedings of December 13, 1954, Pages 2, 3, and 4.
   "By the Court:
   "Just a minute! Are the defendants in Court?
   "By Mr. Levy:
   "Is Lewis Cagle Jr. in Court?
   "By the Defendant Cagle:
   "Yes sir.
   \*      \*      \*      \*      \*
   "By Mr. Garvey:
   "May it please the Court, Attorney David Conroy and I represent Lewis Cagle Jr., and at the present time we move for a continuance of the arraignment so that we might inquire into certain preliminary matters such as the grand jury and the validity of the indictment.
   \*      \*      \*      \*      \*
   "By the Court:
   "In accordance with the motions made by counsel for the three defendants which the United States Attorney has indicated he is in agreement, the arraignment for the three defendants will be continued at this time, and the counsel for the defendants will be given until Friday, January 14, to file any motions in connection with the indictment, the arraignment, or the trial of this case. Thereafter argument will be held on these motions in this Court at Lewisburg on Monday, January 24, at 11:00 A.M."

2. Transcript of proceedings of January 24, 1955, and February 3, 1955.

3. Transcript of proceedings of May 6, 1955, Pages 4 and 5.
   "The Court: Just a minute. I think it is very important that the Court should be perfectly clear that these defendants understand fully and completely just exactly what they are doing. They have previously, as I understand, entered pleas of Not Guilty, now they all three are before the Court requesting leave to withdraw their pleas of Not Guilty and enter a plea severally and

1955, at the time set for the imposition of sentence, counsel for Cagle made a plea on behalf of his client which evidenced a thorough research and extensive inquiry into defendant's background.[4] There was no intimation however that Cagle was not a party to the commission of the crime. Counsel stated:

"Now he did it, nevertheless. Why did he do it? Let me say, first of all, that the prison itself is full of these pressures that coerce a person into doing things that normally no one sane person would do. I think perhaps the most terrible word that has appeared in the English language in the last ten years is the word 'chicken.' The other day a boy jumped off a bridge in New York and killed himself because his friends said if he didn't do it, he would be chicken. When a beating-up was proposed in Lewisburg Penitentiary and Lewis was asked to join, he had only fifteen days left to go before his sentence would have expired. Yet because of the pressure of this 'chicken', he let himself become a part of it."

Cagle, standing beside his counsel, took no issue with this statement. Before sentence was imposed, the other defendants made brief statements but Cagle indicated he had no comment.[5] There can be no doubt that Cagle was competently represented, conscientiously and adequately advised, and that with full knowledge he voluntarily entered his plea.

Cagle has now filed a motion to vacate the sentence. His first contention is in connection with the sentence he was serving at the time of the commission of the present offense. He was originally sentenced in 1951 under the Juvenile Delinquency Act, for the period of his minority. He was released on parole and subsequently returned for violation of parole, with two years added for a crime committed while on parole. He was transferred from the National Training School to Chillicothe and from there to the United States Penitentiary at Lewisburg, Pennsylvania. This, he says, was "illegal." Such transfers were necessitated by his own conduct and were entirely within the authority and discretion of the Attorney General. This is true whether petitioner was sentenced generally, 18 U.S.C. § 4082[6] or under the Juvenile Delinquency Act which provides, 18 U.S.C. § 5034:

"If the court finds a juvenile to be a delinquent, it may place him on probation for a period not exceeding his minority, or commit him to the custody of the Attorney General for a like period." [7],

and the same is true under the Federal Youth Correction Act, 18 U.S.C. § 5010. Even if it were otherwise, there would be no relationship with the crime here involved, namely, murder of a fellow prisoner.

Petitioner now seeks to set up a defense that "he was forced into being a party to the crime" and that he was advised by his attorneys to plead guilty.

---

each one of you to a plea of Guilty to Murder in the Second Degree. * * *
* * * * *

"The Court: As to you Cagle, you are fully aware of what you are doing?
"Defendant Cagle: Yes sir.
"The Court: You have previously been before the Court and entered a plea of Not Guilty to the charge of Murder?
"Defendant Cagle: Yes sir.
"The Court: You are now asking leave of this Court to withdraw your plea of Not Guilty, and to enter a plea of Guilty to Murder in the Second Degree?
"Defendant Cagle: Yes sir.

"The Court: You have done that after full consulation with both your Attorneys, Mr. Conroy and Mr. Garvey?
"Defendant Cagle: Yes sir.
"The Court: That is your present desire?
"Defendant Cagle: Yes sir."

4. Transcript of proceedings of May 26, 1955, Pages 27 to 35.

5. Transcript of proceedings of May 26, 1955, Page 37.

6. Garcia v. Steele, 8 Cir., 193 F.2d 276.

7. Suarez v. Wilkinson, D.C.M.D.Pa., 133 F.Supp. 38.

This petitioner had previous experience in courts. His various transfers were necessitated by his having been a trou- blemaker and anything but the submissive type. It was an accepted fact, so stated in open court and not denied by Cagle, that he struck the first blow with part of a brick encased in a sock. Cagle was fully aware of the nature of his plea and the record leaves no doubt that it was voluntary. He cannot now be heard to question it.[8] Likewise, his allegation that he was advised by counsel to plead guilty is insufficient. It is an allegation of error of judgment which, even if true, would not "make the trial a farce and a mockery of justice."[9] In fairness to counsel, however, it should be said that there can be no issue here of competency of counsel. The record fully and conclusively bears out that there was a sincere and commendable effort to find anything that might have benefited the defendant. The advice to plead, if given, was good advice. Cagle was fortunate in having counsel whose persistence enabled him to plead to the lesser "second degree".

■ In United States v. Gallagher, 3 Cir., 183 F.2d 342, 344, the court said:

"Relief under Section 2255 may be granted only where it appears that 'the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.' Motions under this section may not be used to review the proceedings of the trial as upon appeal but merely to test their validity when judged upon the face of the record or by constitutional standards. The purpose of the section was not to confer a broader right of attack upon a judgment and

sentence than might be made by habeas corpus but rather to provide that the attack which theretofore might have been made in some other court through resort to habeas corpus must now be made in the court where the sentence was imposed unless it should appear that this remedy was inadequate.

"Here the appellant, with the advice of counsel, pleaded guilty to the indictment. That plea constituted an admission of his guilt, a waiver of all nonjurisdictional defects and defenses, and admitted all the facts averred in the indictment. The appellant, therefore, could not be heard to challenge those facts in a habeas corpus proceeding. Nor can he do so upon a motion under Section 2255 to set aside the judgment of conviction.

"The basic difficulty with the appellant's contention is that he misapprehends the nature and extent of the jurisdiction of the district court. He appears to think that even though he pleaded guilty to the charge against him the court was without jurisdiction to enter a judgment of conviction because, as he now asserts, he was not in fact guilty of the offense charged. But his plea of guilty was itself a conviction and the court had merely to give judgment and sentence thereon. This the court unquestionably had power to do. For even if the action of the court could be considered as a determination that the facts justified the conviction and this was erroneous, the error would not have been jurisdictional in the sense that it would have deprived the court of the power to hear and determine the case. 'Jurisdiction to decide,' as Chief Justice Stone said in Pope v. United States, 1944, 323 U.S. 1, 14,

---

8. Hunt v. United States, 4 Cir., 237 F.2d 267; Kaye v. United States, 6 Cir., 235 F.2d 187; United States v. Reade, D.C. N.J., 113 F.Supp. 113; Rutrough v. United States, 5 Cir., 217 F.2d 644.

9. United States v. Malfetti, D.C.N.J., 125 F.Supp. 27; United States v. Reade, supra; United States v. Bush. D.C.S.D. W.Va., 135 F.Supp. 3.

65 S.Ct. 16, 23, 89 L.Ed. 3, 'is jurisdiction to make a wrong as well as a right decision.' Moreover a wrong decision upon the merits does not constitute a denial of due process of law if the opportunity of a full hearing is afforded. Such a decision, therefore, does not involve a denial of constitutional rights which may be made the basis of a motion under Section 2255."

That is precisely the situation here.

The motion to vacate must be denied. Order will be entered accordingly.