No. 42,337

STATE OF KANSAS, *Appellee*, v. GEORGE A. FOUNTAINE, *Appellant*.

(414 P. 2d 75)

Opinion filed May 7, 1966.

*John S. May*, of Atchison, argued the cause and was on the brief for the appellant.

*William E. Stillings*, County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Richard H. Seaton*, Assistant Attorney General, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, George A. Fountaine, has appealed from the judgment and sentence imposed against him pursuant to the provisions of the Habitual Criminal Act.

On April 27, 1960, Fountaine appeared before the District Court of Atchison County, Kansas, to answer charges of second-degree burglary and larceny. Mr. Robert D. Caplinger, an Atchison attorney, was appointed counsel for the defendant. Upon arraignment, Fountaine entered pleas of guilty to both charges. Thereupon, the state introduced evidence of two alleged prior convictions, and the defendant was sentenced to a term of thirty years in the Kansas State Penitentiary as a third-time offender.

From that judgment and sentence, the defendant, *pro se*, per-

fected an appeal. That appeal was heard and determined by this court and our opinion affirming the trial court is reported in *State v. Fountaine*, 188 Kan. 190, 360 P. 2d 1119. Those appellate proceedings predated Rule No. 56 (now Prefatory Rule No. 1 [*f*], 194 Kan. xii) promulgated April 16, 1963, and appellate counsel was not provided the defendant at that time.

On October 24, 1964, the defendant filed a motion in this court asking that our mandate be recalled and the appeal reinstated, the basis of his motion being that he was not furnished counsel on the appeal. This court sustained the defendant's motion, in light of *Douglas v. California*, 372 U. S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814, and reinstated the appeal. Mr. John S. May, a practicing attorney of Atchison, Kansas, was thereafter appointed to represent the defendant and has acted as his counsel throughout the present appeal.

The current appeal raises three points, none of which were presented before: (1) The sentence of thirty years is void because one of the two prior convictions relied on was for violation of the Federal Juvenile Delinquency Act; (2) the defendant was not provided with counsel at every stage of the proceedings; and (3) the defendant was not given notice prior to arraignment and sentencing that the Habitual Criminal Act was to be considered. We will consider the points out of order, and turn first to points (2) and (3).

The defendant's complaint that he was not furnished counsel at every stage of the proceedings boils down to this: That he was not represented by counsel at his preliminary examination. This complaint is without substance. We have declared many times that the preliminary examination, under Kansas procedure, is not a critical phase in the accusatory process and that failure to appoint counsel to represent an accused at that time does not infringe upon his constitutional rights or constitute reversible error, absent a showing that he was prejudiced thereby. (*State v. Richardson*, 194 Kan. 471, 399 P. 2d 799; *Cooper v. State*, 196 Kan. 421, 411 P. 2d 652, and cases cited therein.)

We proceed next to the claim that the defendant was not notified of the state's intention to invoke the provisions of the Habitual Criminal Act (K. S. A. 21-107a). There is nothing in the record to indicate that the state gave Fountaine any notice prior to his arraignment. However, counsel for the state points out that the trial court explained the provisions of 21-107a, *supra*, to the defendant

just before his arraignment and maintains that such advice satisfied the requirements of notice.

We need not decide whether the explanation given defendant by the court can be equated with notice that the state would request sentence under the Habitual Criminal Act, for the defendant is in no position at this time to complain of insufficient or inadequate notice. Fountaine was present and represented by counsel when sentence was imposed and neither he nor his counsel objected to the state's offer of proof. Neither did the defendant claim surprise, nor ask for a continuance, nor seek further time to meet and refute the state's evidence. Although an accused is entitled to reasonable notice before sentence is pronounced under the Habitual Criminal Act, this is a right which may be waived. (*Browning v. Hand,* 10 Cir. [1960], 284 F. 2d 346, 347.) Under the circumstances shown to exist in this case, the defendant may not now assert that he was deprived of an opportunity to be heard. The time to complain was then, not now. (*Kelly v. State,* 196 Kan. 428, 431, 411 P. 2d 611; *Chance v. State,* 195 Kan. 711, 408 P. 2d 677.)

The issue of gravest concern is raised by defendant's first point: That the trial court, in imposing sentence under the Habitual Criminal Act, used as one of two prior convictions, a 1942 adjudication of juvenile delinquency under the Federal Juvenile Delinquency Act. Before discussing this issue in depth, we pause to say that the journal entry of conviction contains no reference whatever to such an adjudication but contains, instead, a finding that the defendant was convicted in 1942 of violating the Dyer Act and was confined in the Federal Reformatory at Chillicothe, Ohio.

Such was the state of the record when the first appeal was heard by us, and our decision in that appeal was rendered on the assumption that the defendant had actually been convicted in 1942 of violating the Dyer Act. However, it conclusively appears from the record which is now before us, and it is now conceded by the state, that in 1942 Fountaine had pleaded guilty of "Unlawfully committing offense which rendered him guilty of violation of Federal Juvenile Delinquency Act," and that he was thereupon "committed to the custody of the Attorney General for imprisonment in an institution to be designated by the Attorney General or his authorized representative for the period of THREE (3) YEARS."

Thus, the question before us now is whether the defendant's plea of guilty of a violation of the Federal Juvenile Delinquency Act,

and his commitment thereon, can be said to constitute a conviction of felony within the purview of the Kansas Habitual Criminal Act. Pertinent provisions of the federal act (18 U. S. C. A. §§ 5031-5037) are as follows:

"§ 5031. For the purposes of this chapter a 'juvenile' is a person who has not attained his eighteenth birthday, and 'juvenile delinquency' is the violation of a law of the United States committed by a juvenile and not punishable by death or life imprisonment. June 25, 1948, c. 645, 62 Stat. 857.

"§ 5032. A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise.

"In such event the juvenile shall be proceeded against by information and no criminal prosecution shall be instituted for the alleged violation. June 25, 1948, c. 645, 62 Stat. 857.

"§ 5033. District Courts of the United States shall have jurisdiction of proceedings against juvenile delinquents. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise. The proceeding shall be without a jury. The consent required to be given by the juvenile shall be given by him in writing before a Judge of the District Court of the United States having cognizance of the alleged violation, who shall fully apprise the juvenile of his rights and of the consequences of such consent. Such consent shall be deemed a waiver of a trial by jury. June 25, 1948, c. 645, 62 Stat. 857.

"§ 5034. If the court finds a juvenile to be a delinquent, it may place him on probation for a period not exceeding his minority, or commit him to the custody of the Attorney General for a like period.

"Such commitment shall not exceed the term which might have been imposed had he been tried and convicted of the alleged violation.

"The Attorney General may designate any public or private agency or foster home for the custody, care, subsistence, education, and training of the juvenile during the period for which he was committed.   . . ."

Several federal courts have defined the nature of proceedings initiated under this act and the status of those who have been adjudged juvenile delinquents within its provisions. Invariably, the courts which have considered those questions have determined that an adjudication of delinquency under the act does not amount to a conviction of a crime, but that the proceedings result only in an adjudication of a status to which no criminal stigma is attached. (*United States v. Flowers*, D. C. W. D. Tenn. 1963, 227 F. Supp. 1014; *United States v. Morales*, D. C. D. Mont. 1964, 233 F. Supp. 160; *United States v. Fotto*, D. C. S. D. N. Y. 1952, 103 F. Supp. 430.)

In *Fagerstrom v. United States,* 8 Cir. (1963), 311 F. 2d 717, the court said:

"To be adjudged a juvenile delinquent and committed to the custody of the Attorney General under the Juvenile Delinquency Act, is not to be convicted of or sentenced for a crime. . . . The very purpose of the Act is to avoid the prosecution of juveniles as criminals. . . ." (p. 720.)

This construction of the act has been applied to varying factual situations. In *United States v. Sprouse,* D. C. N. D. Fla. 1956, 145 F. Supp. 292, the court held that the Federal Escape Act did not apply to a person committed to an institution under the Juvenile Delinquency Act. In the opinion, it was said:

". . . Under the Juvenile Delinquency Act a person entitled to be proceeded against under said Act is not charged with or convicted of an offense, but is proceeded against as a juvenile delinquent for the violation of some 'law of the United States.' The conviction is not a crime as defined in 18 U. S. C. § 1, and the juvenile, after conviction, does not bear the stigma of a criminal or lose any of his civil rights. . . ." (p. 294.)

In *Borders v. United States,* 5 Cir. (1958), 256 F. 2d 458, the court held that a proceeding under the Federal Juvenile Delinquency Act was not a criminal action and that the government was not required to establish criminal capacity on the part of one charged thereunder. A similar holding is found in *United States v. Morales,* supra, where it was said that the federal rules of criminal procedure are not applicable to actions brought under the act so far as those rules are inconsistent with the act.

The rule was considered in a slightly different context in *Cotton v. United States,* 10 Cir. (1966), 355 F. 2d 480, where the court held that an adjudication of delinquency and commitment under the Juvenile Delinquency Act is not a conviction of or sentence for crime and that the same is not admissible as impeaching evidence in a later prosecution.

The rationale of the federal decisions is consonant with modern concepts of dealing with youthful offenders. We think it generally accepted by present-day society, as well as by knowledgeable penalogists, that offenders of immature years should not be categorized and treated as felons with all the odium and disgrace which such a classification entails. The philosophy which permeates the many juvenile codes enacted throughout this country is that the state, in its treatment, care, training and discipline of juvenile offenders, acts in its capacity as *parens patriae* for the welfare and in the best interests of young malefactors, as well as in the public's behalf.

(*In re Turner*, 94 Kan. 115, 145 Pac. 871; *State v. Dubray*, 121 Kan. 886, 250 Pac. 316.)

Kansas long has been in the mainstream of the national trend which distinguishes juvenile delinquents from seasoned criminals. In 1905 its first juvenile court act was adopted (L. 1905, ch. 190). That act provided, among other matters, that ". . . in no case shall any proceeding, order or judgment of the juvenile court, in cases coming within the purview of this act, be deemed or held to import a criminal act on the part of any child; but all proceedings, orders and judgments shall be deemed to have been taken and done in the exercise of the parental power of the state." This provision, in substance, has remained in the act from its inception and is now an integral part of K. S. A. 38-801. Similar provisions are found in the juvenile codes of many of our sister states.

Although the Federal Juvenile Delinquency Act does not contain the above provision found in our statute, it is clear that federal courts have construed the federal act in harmony with our own. We agree with that interpretation for it coincides with the design and objectives of the Juvenile Code of this state.

But it is argued by the state that since the Attorney General may, in his discretion, order that a juvenile delinquent be confined in a penal institution, an adjudication of delinquency under the federal act is encompassed within the meaning of K. S. A. 21-107a, which reads in pertinent part:

"Every person convicted a second time of felony, *the punishment of which is confinement in the penitentiary,* shall be confined in the penitentiary not less than double the penalty of the second conviction; and if convicted a third time of felony, he shall be confined in the penitentiary for a period of not less than fifteen years. . . ." (Emphasis supplied.)

Cases are cited where juvenile delinquents have been committed by the Attorney General to the Lewisburg Penitentiary (*Suarez v. Wilkinson*, D. C. M. D. Pa. 1955, 133 F. Supp. 38; *United States v. McCoy*, D. C. M. D. Pa. 1957, 150 F. Supp. 237) and to the penitentiary at Terre Haute (*Sonnenberg v. Markley*, 7 Cir. [1961], 289 F. 2d 126; *Arkadiele v. Markley*, D. C. S. D. Ind. 1960, 186 F. Supp. 586).

The state therefore takes the position that a juvenile delinquent stands convicted of a felony because the Attorney General may, at his option, place him in a penal institution. This argument, however, overlooks the plain statutory injunction that where a

juvenile consents to be proceeded against under the Juvenile Delinquency Act "no criminal prosecution shall be instituted for the alleged violation." The state's argument likewise ignores the beneficent purpose which inheres in statutes of this character: to reclaim and rehabilitate youthful offenders without subjecting them to the baleful influence of hardened criminals or branding them with the opprobrium which follows conviction of crime.

Whether the Attorney General designates a public agency, or a private agency, or a foster home "for the custody, care, subsistence, education, and training" of a delinquent youth, the objective of the Juvenile Delinquency Act remains the same, and an adjudication thereunder does not impart criminality. A persuasive precedent is found in a recent California case, *In re Keller*, 232 C. A. 2d 520, 42 Cal. Rptr. 921, where it was contended that commitment of a nineteen-year-old youth to the California Youth Authority, after a conviction of robbery, constituted a prior conviction within the purview of the California Habitual Criminal Act. This contention was rejected even though Keller had been administratively transferred by the Youth Authority to San Quentin prison, as the California statute permits. In disposing of the state's contention, the court said:

"Thus we see that applicant was placed in San Quentin Prison by the California Youth Authority as a means of accomplishing the purposes of the Youth Authority Act, to-wit, training and treatment directed towards his rehabilitation . . .

. . . . . . . . . . . . . . .

"A minor committed to the California Youth Authority does not receive a *sentence of imprisonment* nor does he *serve a term in a state* prison as is required under section 644 of the Penal Code, to constitute a prior conviction thereunder. (*People v. Lockwood*, 146 Cal. App. 2d 189 [303 P. 2d 621].) The minor so committed remains under the control of the California Youth Authority '. . . so long as in its judgment such control is necessary for the protection of the public.'" (pp. 525, 526.)

A determination by this court that a judgment of delinquency under the Federal Juvenile Delinquency Act is the equivalent of a conviction of a felony would not only violate the spirit of the federal statute, as interpreted by federal courts, but would also contravene the letter and spirit of our own statutes and judicial pronouncements. K. S. A. 62-104 defines felony as ". . . an offense punishable by death or confinement and hard labor in the penitentiary." In *State v. Dubray*, supra, we held that a district court lacked jurisdiction to sentence a juvenile offender to the

reformatory even though his case had been referred to that court for trial in accordance with existing statutes.

The rationale underlying the Dubray decision, and permeating our Juvenile Code as well, is that offenses committed by juveniles are not punishable by penitentiary sentences. This salutory principle is just as applicable when a youthful miscreant has been adjudged a delinquent under the federal statute as when he has been so adjudged under Kansas law.

We conclude that the adjudication of delinquency against this defendant under the Federal Juvenile Delinquency Act does not amount to a prior conviction of a felony as intended by the Habitual Criminal Act of this state and that it cannot be used to enhance the penalty which may be imposed against the defendant.

Our conclusion does not require reversal of the judgment of the court below, for the error may be corrected by the imposition of a legal sentence. (*State v. Woodbury,* 132 Kan. 22, 294 Pac. 928; *State v. Ricks,* 173 Kan. 660, 250 P. 2d 773; *Richardson v. Hand,* 182 Kan. 326, 320 P. 2d 837; *State v. Tague,* 188 Kan. 462, 363 P. 2d 454.) Accordingly, this case is remanded with directions that the sentence be vacated and set aside, and that the defendant be re-sentenced in accordance with the views expressed in this opinion. In all other respects, the judgment is affirmed.

FROMME, J., not participating.