In the Matter of QUINTON A. (ANONYMOUS), Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor.

In the Matter of DARRELL R. (ANONYMOUS), Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor.

Second Department, June 11, 1979

APPEARANCES OF COUNSEL

*Charles Schinitsky (Janet R. Fink* and *Nancy P. Duncan* of counsel), for Quinton A., appellant.

*Bernard M. Alter (Anthony J. Ventura* on the brief), for Darrell R., appellant.

*Eugene Gold, District Attorney (A. David Stern* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General (Robert J. Schack* and *Samuel A. Hirshowitz* of counsel), intervenor *pro se.*

## OPINION OF THE COURT

Titone, J.

Appellants, Quinton A. and Darrell R., appeal from final orders of disposition of the Family Court, Kings County, dated March 17, 1978, which were based on findings that they committed acts, which if committed by an adult, would have constituted the crimes of robbery in the first degree (Penal Law, § 160.15), a "designated felony act" under subdivision (h) of section 712 of the Family Court Act, and burglary in the second degree (Penal Law, § 140.25). Pursuant to such findings, and because the victim of the robbery was found to be over 62 years of age and suffered serious physical injury during the course of such crimes, both appellants, after a dispositional hearing, were ordered to be placed restrictively with the Division for Youth for an initial period of three years, confined initially in a "secure facility" for a period of 12 months and, *inter alia,* after such a period of confinement, to be placed in a residential facility for another 12 months (Family Ct Act, § 753-a, subd 2-a, subd 4, par [a], cls [i], [ii]).

The issues discussed on the appeals from the Family Court orders are (1) whether the age of the victim, Ms. Schwartz, was proven beyond a reasonable doubt to be 62 years or older, and (2) whether, at the time of the alleged assault upon Ms. Schwartz by appellants, the provisions of the Family Court Act (§ 712, subd [h], par [ii], § 753-a, subd 2-a *et seq.*) requiring "restrictive placement" of a youth 14 or 15 years of age for committing, *inter alia,* the "designated felony act" of robbery in the first degree violates constitutional rights of due process and equal protection of the law. In my opinion, the orders of the Family Court should be affirmed.

### PROOF OF AGE

Appellants were charged with physically assaulting Sara Schwartz, a person allegedly over the age of 62 years, on November 18, 1977, at about noon, shortly after she returned from shopping to her fourth floor apartment in Brooklyn, New York. Ms. Schwartz testified at the fact-finding hearing that when she tried to arise from the floor after being thrown to the ground during the attack, she discovered that she could not raise her right arm. Her two assailants, identified as the

appellants, took $15 from her and then fled. Later she was taken to Coney Island Hospital and treated for a "cracked" right shoulder. The shoulder remained taped for six weeks. Ms. Schwartz had still not regained the use of her right arm at the time of the fact-finding hearing. Based on the testimony of the elderly complainant and other evidence adduced at the hearing, the Family Court found that appellants, each 15 years of age at the time, had *inter alia,* committed acts in concert, which, if committed by adults, would constitute the crimes of robbery in the first degree, "a designated felony" pursuant to subdivision (h) of section 712 of the Family Court Act, and burglary in the second degree. After the ensuing dispositional hearing was concluded, appellants were placed in mandatory restrictive placement pursuant to subdivision 2-a *et seq.* of section 753-a of the Family Court Act because serious physical injury had been inflicted by them upon the victim who was over 62 years of age at the time of the occurrence.

At the fact-finding hearing no testimony was adduced either from Ms. Schwartz or anyone else as to her age. However, the Family Court found that she was over 62 years of age when she was attacked, based on (1) a statement that she was 73 years of age contained in the hospital record of her medical treatment resulting from the attack, which record was admitted in evidence, and (2) the Trial Judge's statement at the dispositional hearing that based on his personal observation of Ms. Schwartz' appearance at the fact-finding hearing, she was over 62 years of age.

As to the proof of the complainant's age based on the hospital record, appellants contend that such record was erroneously admitted in evidence under CPLR 4518 (subd [c]) because (1) the signature of the assistant director of the hospital who certified it was not notarized, (2) no witness testified that the record was kept in the ordinary course of business and (3) no evidence was adduced that the assistant director who certified the hospital record was designated to authenticate it. In the alternative, appellants assert that assuming the hospital record was properly in evidence, the statement therein as to the complainant's age does not constitute an admissible entry. I disagree with each of the appellants' arguments challenging the admission of the hospital record as a whole and also as to the challenge directed solely to the entry respecting the complainant's age.

The hospital record of the complainant was admitted in evidence pursuant to CPLR 4518 (subd [c]), which provides:

"4518. Business Records. * * *

"(C) Other records. All records, writings and other things referred to in sections 2306 and 2307 [of the CPLR] are admissible in evidence under this rule and are prima facie evidence of the facts" (bracketed matter supplied).

■ As a reading of that statutory language reveals, there is no requirement that the signature of the authenticator be notarized. Moreover, the purpose of CPLR 4518 (subd [c]) is to allow the admission in evidence, *inter alia,* of municipal hospital records or copies thereof (CPLR 2306, 2307), without the necessity of calling a witness to testify that they were made in the regular course of business. As succinctly stated in New York Civil Practice (5 Weinstein-Korn-Miller, par 4518.26): "The purpose of subdivision (c) is to relieve a party of the necessity of laying a foundation for the admission of those records specified in CPLR 2306 and 2307, provided they are properly certified or authenticated * * * In other words, a witness able to testify that the records were made in the regular course of business will not be needed."

Consistent with the above quotation, Professor Joseph M. McLaughlin made the following pertinent comment (1970 Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 4518):

"Where hospital records are involved (and many other records maintained by governmental bodies—cf. CPLR 2306, 2307), the practice has been to subpoena these records; and copies thereof are then presented at trial—in a sealed envelope. Where is the authenticating testimony? Where is the proof that these records are legitimate business records?

"Following the blueprint of subdivision (b), the Judicial Conference, in 1970, amended CPLR 4518 to insert a new subdivision (c) which provides that all records referred to in CPLR 2306 and 2307 are 'prima facie evidence of the facts contained' therein, provided they bear the appropriate certification or authentication. This dispenses the plaintiff from the requirement of producing an authenticating witness, and casts upon the party who attacks the records the burden of rebutting the presumption that the facts are as contained in the record." (See, also, 1971 Report of Judicial Conference, Proposal No. 2, pp A42, A50.)

With respect to the certification of such records by the assistant director of Coney Island Hospital, it should be noted that under CPLR 2306 (entitled "Hospital records; medical records of department or bureau of a municipal corporation or of the state"), subdivision (a), it is provided, *inter alia,* that where a subpoena duces tecum is served upon a hospital, or upon a department of a municipal corporation or State for the production of records relating to the condition or treatment of a patient, "a transcript or reproduction certified as correct by the superintendent or head of the hospital, department or bureau, or *his assistant* * * * may be produced unless otherwise ordered by a court" (emphasis supplied). After reading such language *in pari materia* with that contained in CPLR 4518 (subd [c]), and in the absence of evidence adduced by appellants to the contrary, I am of the opinion that the Family Court was justified in concluding that the assistant director of Coney Island Hospital had authority to certify the hospital record in dispute (cf. *Brown v Collins,* 223 So 2d 453 [La]). Acts of a public or quasi-public officer which presuppose the existence of other acts and conditions to make them legally operative are presumptive proof of the latter (cf. *Swarthout v Ranier,* 143 NY 499, 504). The general presumption is that no official or person acting under his oath or obligations of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done *(Matter of Marcellus,* 165 NY 70, 77).

I am also of the view that the entry in the record that complainant was 73 years of age was properly admitted in evidence. The law seems settled that those parts of a patient's history necessary or helpful to the observation, diagnosis and treatment of the patient are ordinarily admissible as parts of the hospital record (32 CJS, Evidence, § 728). In this instance, in view of the injuries inflicted upon the complainant, knowledge of her age was a relevant factor in the diagnosis and treatment by the medical staff at Coney Island Hospital (cf. *Williams v Alexander,* 309 NY 283; *Polcsa v East Riv. Mgt. Corp.,* 8 Misc 2d 798).

### DUE PROCESS

As mentioned above, under subdivision 2-a of section 753-a of the Family Court Act, where a juvenile such as each of the appellants herein, is found to have committed a designated felony act involving the infliction of a serious physical injury

upon a person who is 62 years of age or more, the Family Court is mandated to order a restrictive placement for such juvenile. Since the designated felony act herein was robbery in the first degree, under the circumstances, the Family Court, having discretion, *inter alia,* to order placement of each juvenile appellant to a secure facility for a period of not less than 6 months nor more than 12 months, directed that each be placed in a secure facility for the maximum period (see Family Ct Act, § 712, subd [h], par [ii]; § 753-a, subd 4, par [a], cl [ii]).

█ Each appellant contends that the Family Court, by refusing him the right to be heard and present evidence on the issue of whether he was in need of restrictive placement, and the right to treatment in a less restrictive environment, denied him his right to procedural due process of law. Furthermore, asserts each appellant, placements have been reversed where insufficient consideration has been given to the child's individual needs or where less restrictive alternatives have not been explored. I disagree with such contentions.

Contrary to appellants' arguments, subdivision 2-a of section 753-a of the Family Court Act does not eliminate the need for a dispositional hearing or render it a nullity. Explicitly stated in subdivision 1 of section 753-a is the following: *"Every order* under this section shall be a dispositional order, *shall be made after a dispositional hearing* and shall state the grounds for the order." (Emphasis supplied.)

Moreover, although subdivision 2-a mandates a restrictive placement where, *inter alia,* the victim is over 62 years of age, if, prior to the entry of the dispositional order in such a situation, the Family Court determines that a juvenile does not require supervision, treatment or confinement, then it may grant a new fact-finding hearing pursuant to section 761 of the Family Court Act, entitled "New hearing", and dismiss the petition if it believes the allegations contained therein are not established (Family Ct Act, § 751). It should also be noted that at any time during the proceeding, including the dispositional hearing, the Family Court, on its own motion, may substitute a petition to determine whether the youth is in need of supervision (PINS), and/or a neglect petition, for the petition to determine delinquency (Family Ct Act, § 716). Such discretion may be exercised by the Family Court notwithstanding that the subject juvenile is guilty of an act which would be a crime had it been committed by an adult *(Matter*

*of Richard C.,* 43 AD2d 862). It is also not beyond the realm of possibility that after a dispositional hearing under subdivision 2-a of section 753-a of the Family Court Act, a Family Court Judge may determine that mandatory restrictive placement is unconstitutional as applied (cf. *People v Broadie,* 37 NY2d 100, cert den 423 US 950).

It should also be noted that the term "secure facility" in which a juvenile delinquent may be placed under section 753-a has been defined as "[a] *residential facility* * * * which is characterized by physically restricting construction, hardware and procedures, and is designated as a secure facility by the division for youth" (Family Ct Act, § 712, subd [j]; emphasis supplied).

Thus, although subdivision 2-a of section 753-a of the Family Court Act requires that a restrictive placement be ordered because, *inter alia,* of the seriousness of the appellants' transgressions and the age of the victim they assaulted, the "secure facility" in which they will dwell for the first year of such restrictive placement, must, in all other respects, be the equivalent of an abode in a residential environment. That the Legislature has determined that youths such as the appellants who have perpetrated acts of robbery and assault upon elderly persons should reside in a residential, albeit secure, facility for a period of time both for the protection of society and to enable the Division for Youth to provide them intensive and concentrated rehabilitative services in a controlled setting, is not violative of their right to procedural due process (see *People ex rel. Wayburn v Schupf,* 39 NY2d 682, 690-691; *State v J. K.,* 383 A2d 283 [Del]).

■ Appellants' further contention that subdivision 2-a of section 753-a of the Family Court Act, in effect, violates substantive due process because it denies the right to appropriate treatment in the least restrictive alternative as a *quid pro quo* for the juvenile's loss of liberty, is also without merit. In support of their argument, appellants correctly point out that section 711 of the Family Court Act states, *inter alia,* that the purpose of the juvenile delinquency article (art 7) "is to provide a due process of law * * * (b) for devising an appropriate order of disposition for any person adjudged a juvenile delinquent". What is not quoted by appellants from such section however is the last sentence thereof, added in 1976 (L 1976, ch 878, eff July 26, 1976), to wit: "In any juvenile delinquency proceeding under this article, *the court*

*shall consider* the needs and best interests of the respondent *as well as the need for protection of the community"* (emphasis supplied).

Assuming there is a modicum of merit to the discredited concept that effective rehabilitative treatment must be the *quid pro quo* for society's right to exercise its *parens patriae* control in, *inter alia,* the confinement of juveniles (see *Donaldson v O'Connor,* 493 F2d 507, 522, n 22, revd *sub nom. O'Connor v Donaldson,* 422 US 563), it does not follow, as appellants suggest, that society must guarantee that such treatment be administered in a setting where control of each and every juvenile offender is either minimal or nonexistent. Manifestly, rehabilitative goals of the juvenile system do not, as a matter of substantive due process, mandate that each and every youth found to be delinquent, regardless of the underlying circumstances, must be considered eligible for placement in a nonsecure facility at the dispositional stage. As cogently stated by Chief Justice BURGER in his concurring opinion in *O'Connor v Donaldson* (422 US 563, pp 586-587, *supra):* "As an initial matter, the *[quid pro quo]* theory presupposes that essentially the same interests are involved in every situation where a State seeks to confine an individual; that assumption, however, is incorrect * * * A more troublesome feature of the *quid pro quo* theory is that it would elevate a concern for essentially procedural safeguards into a new substantive constitutional right. Rather than inquiring whether strict standards of proof or periodic redetermination of a patient's condition are required in civil confinement, the theory accepts the absence of safeguards but insists that the State provide benefits which, in the view of a court, are adequate 'compensation' for confinement."

Of particular relevance to the issue of substantive due process are the following remarks set forth by the principal draftsmen of the Juvenile Justice Reform Act of 1976, Simon K. Barsky and Richard N. Gottfried (1976 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Part 1, Family Ct Act, art 7):

"The 1976 session of the Legislature enacted a package of bills, including the Juvenile Justice Reform Act of 1976 (L. 1976, c. 878) and related legislation (L. 1976, cc. 112, 191, 514, 515, 516, 587, 606, 607, 608, 880, and 882), making many significant amendments to the Family Court Act, the Execu-

tive Law, the Social Services Law and other statutes, concerning juvenile delinquents and persons in need of supervision.

"The Legislature felt that the recent reported increase in the quantity and seriousness of juvenile crime and the well-documented failings of the juvenile justice system required major action * * * Rejecting proposals to transfer various categories of juvenile offenders to the adult criminal justice system, the Legislature chose instead to seek to reform and strengthen the juvenile justice system * * *

"The greatest attention has been focused *on the creation of the new 'restrictive placement' (see new § 753-a), which provides for a greatly extended period of confinement, with a mandatory period of secure confinement, available to the court in the case of a fourteen or fifteen year old who is found to have committed one of the serious, violent 'designated felony acts.' (See § 712.)* However, this legislation is also aimed at improving the functioning of the Family Court, the State Division for Youth and other agencies, not only in their handling of 'designated felony act' cases but all delinquents and persons in need of supervision. * * *

"For juvenile delinquency and person in need of supervision proceedings generally, the new legislation provides for: (1) in delinquency cases, consideration by the court of the need for protection of the community as well as the needs and best interests of the child * * * (3) replacing designation of detention facilities by the court with certification by the Division for Youth * * * (9) strengthening counsel's right to access to probation materials, and insuring that they are kept from the court until the fact-finding is made * * * (18) repeal of summary procedure for sending Division for Youth juveniles to adult jails * * * (19) requiring the Education and Mental Hygiene Departments to cooperate with the Division for Youth with respect to services for children placed with the Division * * * and (22) empowering the Division for Youth to monitor and regulate the services provided by authorized agencies, where reimbursible [sic] by the Division * * *

"This legislation cannot be characterized simply as taking a 'rehabilitation' or 'treatment' approach, a 'punishment' approach, or a 'quarantine' approach. There are, instead, elements of various theories of juvenile justice incorporated in it. Certainly, the legislation reflects rehabilitative thinking, as demonstrated by the requirements for determining need for a

restrictive placement and for services to be provided in secured facilities. Equally certain, most juveniles will regard their secure or prolonged confinement * * * at least initially, as punishment. * * * And even if rehabilitation and punishment are not effective, the legislation is designed to remove certain youngsters from the community, in appropriate cases, for sufficient time for them to mature and develop some self-control in a setting that is as benign and helpful as possible." (Emphasis supplied.)

Essentially, the applicable due process standard in juvenile proceedings is fundamental fairness which encompasses in this instance individualized treatment within the framework of placement options made available by the Legislature (cf. *McKeiver v Pennsylvania*, 403 US 528, 543). In *People ex rel. Wayburn v Schupf* (39 NY2d 682, 686, *supra*), the Court of Appeals held that the provision of section 739 of the Family Court Act authorizing pretrial detention of a youth charged as a juvenile delinquent where there is a serious risk that he may commit criminal acts before the return date of the petition did not violate either the due process or equal protection provisions of the Federal or State Constitution. The following language employed by the majority of this State's highest court in *Schupf (supra,* pp 687, 689-691) is especially relevant to the matter at bar:

"Subdivision (b) of section 739 authorizes pretrial detention to prevent another crime from being committed by the juvenile. This statute reflects the merger of two fundamental concerns of the State—to protect the community prospectively from the perpetration of serious crimes and to protect and shelter children who in consequence of grave antisocial behavior are demonstrably in need of special treatment and care. * * *

"The separately formulated claim that subdivision (b) of section 739 works a denial of due process of law is not persuasive. * * * Nor can we accept the assertion, advanced under a due process heading * * * that because the degree of probability of repetition of criminal behavior cannot be predicated with scientific precision, there is ineluctably involved an unconstitutional element of vagueness or speculation. Such an element is necessarily present in the administration of any bail system, in the imposition of alternatively available sentences, in the administration of a parole system, or in any other procedure in which discretionary authority for differing

criminal dispositions is vested in a court or an administrative body. * * *

"*Most important—intelligent, effective and compassionate means must be found to assist children that are not subject to parental guidance or control, or whose custodians are ineffectual, through the temptations and turbulence of adolescence.* In this aspect the children are the victims. On the other hand, if they are victims it must also be acknowledged that they are the perpetrators—of *homicides, robberies, burglaries and rapes which threaten to make the modern city an imprisoning fortress for the old, the weak and the timid.* Probable cause was found here, for instance, to conclude that this youth had engaged in a mugging which led to the death by strangulation of a pedestrian on the streets of New York.

"*Our Legislature confronted the necessity to reconcile the legitimate interest of youth in their liberty both with their entitlement to protection and guidance in their growing years and with the interest of society in its own protection.* We cannot say that the constitutional rights of relator were infringed when the means chosen for the achievement of that objective was the adoption of subdivision (b) of section 739." (Emphasis supplied.)

Consistent with the rationale enunciated by the majority of the Court of Appeals in *People ex rel. Wayburn v Schupf (supra),* I believe that the Legislature, disturbed by its prior unsatisfactory experience with the lenient treatment of delinquents, had constitutional authority to enact subdivision 2-a of section 753-a of the Family Court Act so as to require that rehabilitative treatment be administered for a narrow class of delinquents, such as appellants, within a framework of restrictive placement.

### EQUAL PROTECTION

On the issue of equal protection, appellants contend, *inter alia,* that no rational basis or compelling interest justifies the alleged discrimination perpetrated upon them in the form of restrictive placement. They claim that very few crimes mandating restrictive placement are committed by children under 16 and, also, that even if the State interest in curbing juvenile crime against the elderly is sufficiently compelling to warrant distinct treatment, the means chosen by the Legislature to that end are overly drastic and not justified. Appellants also complain that under subdivision 2-a of section 753-a of the

Family Court Act, they are automatically ineligible for dispositional options equivalent to youthful offender treatment or probation, thereby seriously compounding their deprivation of equal protection.

■ With respect to appellants' "rational basis" and "compelling interest" arguments, suffice it to say that segments of legislative reports submitted by the Attorney-General in his appendix on appeal reveal, *inter alia,* a high incidence of crime against the elderly in New York City in recent years and the relation of juveniles as perpetrators of such crimes.

For example, during 1975 the New York City Police Department reported that of 83,190 robbery complaints city-wide, about 20% or 16,600, were committed indoors—in hallways, elevators, apartments, private homes, etc. More than one in every four of these indoor robbery victims was age 60 or over. If pocketbook snatches and open-area robberies were added to the indoor incidents, the New York City 1975 total of reported robberies of the elderly would come to a shameful 8,656.

Furthermore, the Attorney-General, in the same appendix, submitted extracts from the legislative hearing testimony of a detective of the Bronx Senior Citizen Robbery Unit. From his unit's reports, he figured that 35% of the perpetrators of indoor robberies against the elderly were under 16 years of age. In one scientific study, the report noted that in eight American cities, it was projected that younger offenders were slightly more likely to victimize older persons. Testimony was also adduced at the legislative hearing from juvenile delinquents themselves as to the ease of committing robberies of elderly persons and the unlikelihood of the juveniles suffering any penal consequences. Documentation was also submitted to the legislative committee on the significant increase in victimization of senior citizens at the same time there was evidence of a steady increase in violent juvenile crime.

■ Finally, I reject the argument that subdivision 2-a of section 753-a of the Family Court Act violates appellants' equal protection rights because they are not accorded dispositional rights and options equivalent to youthful offender treatment or probation. I agree that in a given set of circumstances, the court processing felony cases "might" place on probation a minor over 16 years of age found guilty of the same conduct as that for which the appellants were held responsible. However, this one possibility pales in significance when it is realized that under section 60.02 of the Penal Law,

a sentence of imprisonment may be imposed upon a youthful offender. Moreover, before being granted such status, the youth over 16 years of age may be subjected to a public trial in the felony court. Unlike juvenile delinquency proceedings, the process of convicting youthful offenders is clearly a criminal process. Youthful offender treatment merely presents a new sentencing option to the Trial Judge. However, it requires no changes in the procedure by which guilt is determined or in the method by which the offender is brought into the criminal justice system (cf. *United States v Ramirez,* 556 F2d 909, 921-922, cert den 434 US 926).

It should also be noted that should probation be revoked, the court must sentence the youthful offender to a term of imprisonment (Penal Law, § 60.01, subd 4; § 60.02).

In sum, a disposition of 6 to 12 months in a secure facility with otherwise residential characteristics, plus a corresponding period in a nonsecure residential setting, out of a three-year placement, with mandated rehabilitative treatment during such placement, hardly constitutes harsh treatment for the inflicting of serious physical injury upon an elderly person during the course of a robbery.

The other issues raised by appellants have been considered and found to be without merit. Accordingly, the orders of the Family Court as to each appellant should be affirmed.

HOPKINS, J. P., O'CONNOR and COHALAN, JJ., concur.

Two orders of the Family Court, Kings County, one in each proceeding, both dated March 17, 1978, affirmed, without costs or disbursements.