OPINION OF THE COURT
Elrich A. Eastman, J.
This respondent, Phillip S., comes before this court for disposition on two fact findings, to wit, Docket No. D-30/82, sexual abuse (Penal Law, § 130.55), made on February 18, 1982 by Judge Davis and consolidated with this Docket No. D-2773/81, robbery in the first degree (Penal Law, § 160.15) made February 26, 1982. The first finding is a misdemeanor and the second is a class B felony or a designated felony under section 712 of the Family Court Act. The acts constituting crimes, if committed by an adult, consisted of squeezing the buttocks of the complaining witness and forcibly taking money from the other complainant at knifepoint, respectively. These acts occurred on January 5, 1982 and July 25, 1981. The latter proceeding was initiated in criminal court and was removed to this court on August 25, 1981. Subsequent thereto on April 18, 1982, the respondent was arrested on another robbery in *596 the first degree as a juvenile offender and entered a plea of guilty in the Supreme. Court to robbery in the second degree on June 15, 1982. The acts committed by respondent and two companions constituted of confronting the complainant on the subway and forcibly taking property from her. As a result of this last crime, the respondent was sentenced to a term of one year as a youthful offender on October 25, 1982.
Before reaching a disposition in this case, it is incumbent upon this court to determine the nature of its function with respect to a juvenile within its jurisdiction who has become a part of the adult criminal system before this court’s disposition becomes effective.
The Juvenile Court first saw its beginnings in 1899 with the enactment of an Act to Regulate Treatment and Control of Dependent, Neglected and Delinquent Children passed in Illinois. From its inception the court became immersed in controversy. Central to the controversy was the attempt to combine within the court, legal and social functions. Moreover, these courts were criticized for not providing due process of law to the children.* After years of abstinence, the United States Supreme Court addressed the due process issue for the first time in 1966 (Kent v United States, 383 US 541). There the court found that the basic requirement of due process and fairness must be satisfied before a juvenile may waive the jurisdiction of the Juvenile Court to be tried by an adult court. Following this decision the court in the case of Matter of Gault (387 US 1) extended the basic constitutional rights of counsel, notice, confrontation, privilege against self incrimination, appellate review and transcript of the proceedings to juveniles. Thereafter followed the decisions of Matter of Winship (397 US 358), McKeiver v Pennsylvania (403 US 528) and Breed v Jones (421 US 519). Each of these decisions extended due process to Juvenile Courts except McKeiver v Pennsylvania {supra) which denied jury trials in juvenile proceedings. Nevertheless, the formalization of the Juvenile Courts was underway and the informality of the parens patriae as *597 applied to juveniles was becoming constricted. Widespread disappointment with the results of the Juvenile Courts, as conceptualized, speeded the urge for reform. Added to this was the impetus of community pressure for sterner measures against juvenile crime that culminated in the Juvenile Justice Reform Act of 1976 and the Juvenile Justice Reform Amendment of 1978 (L 1976, ch 878; L 1978, ch 478). Each of these acts shifted the focus from being solely on the best interests of the child, and included the protection of the community. A new class of designated felonies was introduced with mandatory restrictive placement. Moreover, a juvenile offender was made criminally responsible for his acts under certain circumstances and subject to trial in the criminal court, if not removed to the Family Court. (Penal Law, § 10.00, subd 18.) These statutes further criminalized the juvenile justice system as more and more the Code of Criminal Procedure became applicable to juveniles. As a consequence thereof, the pure concept of rehabilitation of juveniles as the basic object of Family Court has given way to some degree to the punitive. This, notwithstanding the admonition to invoke the least restrictive alternative in dispositional proceedings.
Under sections 114 and 115 (subd [a], par [v]) of the Family Court Act, the Family Court is given “exclusive original jurisdiction” over juvenile proceedings instituted under article 7 of the Family Court Act. Nonetheless, the Supreme Court exercises concurrent jurisdiction over Family Court matters by reason of article VI (§ 7, subd a; § 13, subd d) of the New York Constitution, giving that court “general original jurisdiction in law and equity”. Howevér, juvenile offenders are not within the jurisdiction of the Family Court. They are criminally responsible for their acts as any adult (Penal Law, § 10.00, subd 18; CPL 1.20, subd 42). Upon conviction they are confined in facilities supervised by the Division For Youth as are juvenile delinquents subject to restrictive placement. (Penal Law, § 70.20, subd 4; Executive Law, § 515-b.) A juvenile delinquent confined under a restrictive placement may be transferred to a mental health facility if necessary. (Mental Hygiene Law, § 9.49.) Moreover, such a delinquent could remain under Division For Youth supervision until *598 his 21st birthday (Family Ct Act, § 753-a, subd 3, par [d]) or he could receive ancillary services provided by law (e.g., Education Law, § 112; Executive Law, § 501; Mental Hygiene Law, § 7.05). These are not facilities afforded to a juvenile offender under sentence of the criminal court. Clearly, the Legislature in dealing with serious crimes among juveniles sought to institute greater accountability and responsibility for juvenile conduct. Simon K. Barsky and Richard N. Gottfried, in the Supplementary Practice Commentary to article 7 of the Family Court Act (McKinney’s Cons Laws of NY, Book 29A, pp 331, 333, 1976-1982 Supp Pamph), state: “This legislation cannot be characterized simply as taking a ‘rehabilitation’ or ‘treatment’ approach, a ‘punishment’ approach, or a ‘quarantine’ approach. They are, instead, elements of various theories of juvenile justice incorporated in it.”
Thus, in the instance of serious crimes, the legislative intent reflects an admixture of rehabilitation, correction and punishment. (Matter of Quinton A., 68 AD2d 394.) This being so, this court may exercise jurisdiction over a juvenile sentenced under the juvenile offender act by the Supreme Court for a crime arising out of acts other than the act before this court. It may exercise that jurisdiction in the furtherance of the protection of the community, albeit the Supreme Court has considered that aspect, and also in the best interests of the child, when it is considered how many persons are released from adult prisons into society with no preparation for re-entry. The mandate for community protection has been made as equally strong as the concern for the best interest of the child. Commenting on this aspect of the legislation, Richard N. Gottfried and Simon K. Barsky, in their Supplementary Practice Commentary to section 711 of the Family Court Act (McKinney’s Cons Laws of NY, Book 29A, p 334, 1976-1982 Supp Pamph), state: “The Juvenile Justice Reform Act of 1976 amended this section to establish that protection of the community is as strong a mandate upon the court as the court’s need to serve the best interests of youngsters before it in a juvenile delinquency proceeding.”
Moreover, this court’s function as parens patriae over children within its jurisdiction continues unabated by the *599 special adjudication of the infant as a juvenile offender for the commission of an act within the statutory scheme for criminally responsible acts. For indeed, until the age of 16 years substantively removes the child from this court’s jurisdiction, the state of infancy subsists and reattaches to further acts of commission within this court’s jurisdiction. Thus this court’s concern for his treatment and supervision is not permanently displaced. Actually, this court’s disposition is in effect supplementary to the Supreme Court’s sentence and may provide the bridge for his useful return to society. In the instance of designated felonies, this is particularly true where restrictive placement is imposed under section 753-a of the Family Court Act with mandatory ancillary services provided therefor. The comparison urged upon the court with CPL 310.85 is inapplicable. This section must be read together with CPL 300.50 and acts as an implementation thereof. Only in cases before the criminal court, which include an offense for which the youth is criminally responsible or where he is awaiting sentence or has been sentenced on another conviction, is the lesser offense, where no criminal responsibility is present, set aside as a nullity by the criminal court. In any other instance the lesser offense is treated as a juvenile delinquency adjudication and transferred to the Family Court under CPL article 725. (See Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 310.85, p 691.) This in no way affects a finding by the Family Court for an act within its jurisdiction.
Consequently, this court now proceeds to consider the proper disposition in these two cases.
Reviewing the history of this respondent, it is evident that after two findings in this court, the respondent committed an act while awaiting disposition for which he .was made criminally responsible under subdivision 18 of section 10.00 of the Penal Law. Two of the acts involved the use of force and one included use of a dangerous weapon. The respondent’s personal history indicates that a great portion of his lifetime has been spent in placement of a voluntary nature including a stay at Pope Pius XII. Some time has been spent with foster parents who are willing to receive him back in their home.
*600 Evident from all reports and testimony is the fact that respondent has a rejecting mother and somewhat stormy home "life. His stay with his foster parents from 1971 through 1975 has not markedly changed his behavior pattern despite their best efforts. This raises a question of doubt as to how successful further efforts, albeit well intended, will result in modifying the respondent’s behavior. This court notes favorably the school performance of this respondent while under supervision at Spofford. Moreover, this .court has duly considered the program outlined by the foster brother if he returned to the foster care of Reverend and Mrs. Jones but seriously doubts its effectiveness.
Accordingly, this court finds that the needs and best interests of the respondent would be served and likewise the protection of the community duly considered by continuing the proceeding and placing the respondent restrictively under section 753-a (subd 4, par [a], cl [i]) of the Family Court Act for an initial period of three years with the Division For Youth.

 Major Issues in Juvenile Justice Information and Training: Services to Children in Juvenile Courts. The Judicial Executive Controversy. A Study by the Academy for Contemporary Problems.