Jones, J.
We hold that the provision of the Family Court Act[1] that authorizes pretrial detention of a youth charged as a juvenile delinquent when there is a serious risk that he may commit a criminal act before the return date of the petition does not violate the equal protection or due process provisions of our Federal or State Constitutions.
On October 8, 1974 a petition was filed in the Family Court of Kings County alleging that the 15-year-old youth on whose behalf this habeas corpus proceeding was instituted had committed acts which, if committed by an adult, would constitute the crimes of murder in the second degree, manslaughter in the first degree, assault in the first degree, reckless endangerment in the first degree, criminal possession of stolen property in the third degree, and menacing. On October 11, after a hearing, a finding of probable cause was made, and after additional testimony on the question of possible detention was received the court ordered the youth detained pending a fact-finding hearing on the petition to be held on October 23. In ordering the detention the court expressly stated that it had no doubt about the youth’s appearance in court on the trial date but that there was a likelihood that he would commit another crime unless detained.[2] Thus, the detention was predicated solely on subdivision (b), without reliance on subdivision (a), of section 739 of the Family Court Act, which provides:
*686 "§ 739. Release or detention after filing of petition and prior to order of disposition.
"After the filing of a petition under section seven hundred thirty-one or seven hundred thirty-two, the court in its discretion may release the respondent or direct his detention. In exercising its discretion under this section, the court shall not direct detention unless it finds that unless the respondent is detained:
"(a) there is a substantial probability that he will not appear in court on the return date; or
"(b) there is a serious risk that he may before the return date do an act which if committed by an adult would constitute a crime.”
Thereafter the present habeas corpus proceeding was instituted and an order of release pending the hearing was issued by a Justice of the Supreme Court who concluded that subdivision (b) of section 739 is violative of the equal protection clause because it authorizes pretrial detention of juveniles charged with criminal behavior while there is no comparable authority for pretrial detention of adults similarly charged (cf. CPL 510.30). Respondent has taken a direct appeal to this court pursuant to CPLR 5601 (subd [b], par 2) on the ground that the only issue involved is the constitutionality of the statute.
We are informed that since this appeal was taken to our court relator-respondent has been adjudicated a juvenile delinquent and after a dispositional hearing has been placed at the New York training school. Thus, it may be said that any determination we may make has been rendered moot as to Charles L. Because the situation is likely to recur, however, and the substantial issue may otherwise never be reached (in view of the predictably recurring happenstance that, however expeditiously an appeal might be prosecuted, fact-finding and dispositional hearings normally will have been held and a disposition made before the appeal could reach us), both parties urge us to retain the present appeal and we decline to dismiss it on the ground of mootness (People ex rel. Guggenheim v Mucci, 32 NY2d 307, 310).
We turn then to the equal protection and due process contentions.
We agree with the conclusion at Special Term that any pretrial detention impinges on the right to liberty, a funda *687 mental right that is recognized in the constitutional sense as carrying a preferred status and so is entitled to special protection. Accordingly, the legislative differentiation here in treatment between youths and adults is to be examined under strict scrutiny and may be justified only by the existence of a compelling State interest to be served by the differentiation, and even then only if no less restrictive means are available to satisfy that compelling State interest. (Dunn v Blumstein, 405 US 330, 342-343; Shapiro v Thompson, 394 US 618; Montgomery v Daniels, 38 NY2d 41, 59.)
We disagree with Special Term, however, that under this strict standard the present statute works an impermissible denial of equal protection or due process. In our view there is a compelling State interest to be served in differentiating between juveniles charged with delinquency and adults charged with crime with respect to preventive detention, and in the very nature of the process there is no less offensive means to achieve the desired objective.
Subdivision (b) of section 739 authorizes pretrial detention to prevent another crime from being committed by the juvenile. This statute reflects the merger of two fundamental concerns of the State—to protect the community prospectively from the perpetration of serious crimes and to protect and shelter children who in consequence of grave antisocial behavior are demonstrably in need of special treatment and care. The cast of the statutory provision is noteworthy. The predicate which triggers the discretionary authority under the statute is a finding. that there is a serious risk that the juvenile charged with delinquency may commit another criminal act—an objective fact. The statute omits to specify whether, on the basis of such a predicate finding, detention may be ordered for the protection of the public or for the benefit of the juvenile or both, and requires no supplemental statement by the court of the subjective purpose for which the detention is ordered. Thus, in the present case the record contains no recital by the Family Court Judge of the purpose behind the detention of Charles L.
Our society recognizes that juveniles in general are in the earlier stages of their emotional growth, that their intellectual development is incomplete, that they have had only limited practical experience, and that their value systems have not yet been clearly identified or firmly adopted. In consequence of what might be characterized as this immaturity, juveniles are *688 not held to the same standard of individual responsibility for their conduct as are adult members of our society. That this is so is made manifest by the establishment and continuation of youthful offender procedures (CPL art 720) and juvenile delinquency proceedings (Family Ct Act, art 7), under neither of which is there any accumulation of a criminal record or exposure to second-felony offender sentencing under section 70.06 of the Penal Law.
For the same reasons that our society does not hold juveniles to an adult standard of responsibility for their conduct, our society may also conclude that there is a greater likelihood that a juvenile charged with delinquency, if released, will commit another criminal act than that an adult charged with crime will do so. To the extent that self-restraint may be expected to constrain adults, it may not be expected to operate with equal force as to juveniles. Because of the possibility of juvenile delinquency treatment and the absence of second-offender sentencing, there will not be the deterrent for the juvenile which confronts the adult. Perhaps more significant is the fact that in consequence of lack of experience and comprehension the juvenile does not view the commission of what are criminal acts in the same perspective as an adult. It serves to refer to the common recognition of the high school "lark”, or to the relative indifference which the young attach, for instance, to shoplifting or to "borrowing” an automobile and the unconcern with which they view the possibility of being apprehended. There is the element of gamesmanship and the excitement of "getting away” with something and the powerful inducement of peer pressures. All of these commonly acknowledged factors make the commission of criminal conduct on the part of juveniles in general more likely than in the case of adults. Antisocial behavior of the young may be dismissed, or even be expected, as a "prank”, a characterization never applied to similar conduct of an adult. In consequence of these and other like considerations, protection of the public peace and general welfare justifies resort to special procedures designed to prevent the commission of further criminal acts on the part of juveniles as differentiated from adults.
From the other aspect, the State has a recognized interest in making provision for the protection and training of children in difficulty, a concern which is at the heart of the juvenile justice system. (Matter of Samuel W., 24 NY2d 196, *689 197, revd on other grounds sub nom. Matter of Winship, 397 US 358.) This objective, for which there is no matching counterpart with respect to adults, is advanced by use of the statutorily authorized system of pretrial detention for juveniles. For the reasons discussed above and others, it may very well be concluded that there is a high likelihood that the juvenile will fall into further criminal activity if he is returned to the same environment and setting in which his present alleged misconduct occurred. The same factors dictate the desirability of protecting the juvenile from his own folly. (Baker v Smith, 477 SW2d 149, 151 [Ky].)
Whatever may be the articulated explanation or however persuasive one assigned reason may appear in comparison with another, it cannot be denied that society, the Legislatures and the courts all recognize that, while the individual rights of children as well as of adults are entitled to constitutional protection, there are significant, even compelling, differences between children and adults which permit different procedures with respect to criminal behavior without denial of constitutional equal protection or due process. (McKeiver v Pennsylvania, 403 US 528; Matter of William M., 3 Cal 3d 16, 30, n 24.)
Concluding then, as we do, that there is a compelling State interest in making provision for pretrial detention of juveniles when none isñnade for adults, we also conclude that it cannot be said that a less burdensome means could be found to achieve the objective. Analytically the compelling State interest is to prevent the commission of further criminal acts. The means chosen is physically to remove the offender from the arena of possible action. The means in the very nature of the objective must be "detention” in some form. Neither respondent, nor anyone else, advances any hypothesized alternative, less burdensome form of "detention” than the preventive detention authorized by subdivision (b) of section 739.
The separately formulated claim that subdivision (b) of section 739 works a denial of due process of law is not persuasive. To a very large extent the considerations of equal protection and due process are the same and much of what has been said with respect to equal protection applies as well to due process, surely with respect to the assertions that the pretrial detention provision of section 739 is irrational. Nor can we accept the assertion, advanced under a due process heading and accepted in the concurring opinion of Judge *690 Fuchsberg that because the degree of probability of repetition of criminal behavior cannot be predicated with scientific precision, there is ineluctably involved an unconstitutional element of vagueness or speculation. Such an element is necessarily present in the administration of any bail system, in the imposition of alternatively available sentences, in the administration of a parole system, or in any other procedure in which discretionary authority for differing criminal dispositions is vested in a court or an administrative body.
There is another aspect. The children who come before Family Court fall largely into two categories—those who are no longer subject to the guidance or effective control of their parents or guardians, and those who have no custodians at all. Indeed this is what has contributed to their difficulties. In this circumstance to a very real extent Family Court must exercise a substitute parental control for which there can be no particularized criteria.
We add that we do not find significant the statistics cited by respondent for the proposition that in New York City in the judicial year 1972-1973 a larger percentage of youngsters charged in delinquency proceedings were held in pretrial detention than were ultimately placed in training schools. Entirely without reference to the fact that these statistics do not relate to the same cases, it must be apparent that there is a vastly different body of relevant data on which to make an informed determination as to the desirability of placement after the dispositional hearing. It should surprise no one that caution and concern for both the juvenile and society may indicate the more conservative decision to detain at the very outset, whereas the later development of very much more relevant information may prove that while a finding of delinquency was warranted, placement would not be indicated.
This case draws attention to what appears to be a growing tragedy—the thus far elusive and largely unmanageable problem of the neglected and delinquent child in our society. Most important—intelligent, effective and compassionate means must be found to assist children that are not subject to parental guidance or control, or whose custodians are ineffectual, through the temptations and turbulence of adolescence. In this aspect the children are the victims. On the other hand, if they are victims it must also be acknowledged that they are the perpetrators—of homicides, robberies, burglaries and rapes which threaten to make the modern city an imprisoning *691 fortress for the old, the weak and the timid. Probable cause was found here, for instance, to conclude that this youth had engaged in a mugging which led to the death by strangulation of a pedestrian on the streets of New York.
Our Legislature confronted the necessity to reconcile the legitimate interest of youth in their liberty both with their entitlement to protection and guidance in their growing years and with the interest of society in its own protection. We cannot say that the constitutional rights of relator were infringed when the means chosen for the achievement of that objective was the adoption of subdivision (b) of section 739.
For the reasons discussed, we conclude that the provisions for pretrial detention of a youth charged as a juvenile delinquent found in subdivision (b) of section 739 do not offend either the equal protection or the due process constitutional mandates. Accordingly, the judgment of the Supreme Court should be reversed, and the petition for a writ of habeas corpus dismissed.

. At the time involved in this proceeding the provision was subdivision (b) of section 739 of the Family Court Act. By chapter 837 of the Laws of 1975 it was renumbered as section 739 (subd [a], par [ii]), effective September 1, 1975. In this opinion the reference will be to its former number, subdivision (b) of section 739.

. In the procedural posture in which this appeal reaches us no question is presented as to the necessity for or the sufficiency of the record to support the finding of the Family Court Judge that unless this young man "is detained * * * there is a serious risk that he may before the return date do an act which if committed by an adult would constitute a crime.” (Family Ct Act, § 739, subd [b].) Accordingly, we intimate no view as to what, if any, are the statutory requirements in these respects.