(574 P.2d 234)

No. 49,220

WILLIAM PAULEY, JR., A Minor by and through his Guardian Ad Litem, STEVEN HORNBAKER, *Plaintiff*, v. JIM GROSS, Sheriff of Geary County, Kansas, *Respondent.*

Petition for review denied January 25, 1978.

Opinion filed December 16, 1977.

*Steven Hornbaker,* of Harper & Hornbaker, Chartered, of Junction City, for the plaintiff.

*Michael E. Francis,* county attorney, and *Curt T. Schneider,* attorney general, for the respondent.

*Jim Lawing,* of Wichita, for ACLU of Kansas Foundation, and *Marty Guggenheim,* of New York City, for American Civil Liberties Union, *amici curiae.*

*Ira Dennis Hawver,* of Topeka, for Kansas Trial Lawyers Association, *amicus curiae.*

*Roger N. Walter,* assistant attorney general, and *Curt T. Schneider,* attorney general, *amici curiae.*

HARMAN, C.J.: This is an original proceeding in habeas corpus. The issue is whether a juvenile is entitled to pretrial bail as a matter of right under our federal and state constitutions. The case is submitted upon stipulated facts after briefing and oral argument.

On May 26, 1977, plaintiff, William Pauley, Jr., a seventeen-

year-old male, was arrested upon a charge of burglary and grand theft. The same day delinquency proceedings under our juvenile code were instituted against him in the district court of Geary county and a guardian ad litem was appointed. A temporary detention hearing pursuant to K.S.A. 1976 Supp. 38-819 was held May 27, 1977, at the conclusion of which the court refused to release plaintiff to his guardian, denied bail, and ordered that the sheriff of Geary county should have plaintiff's custody in a special area away from adult prisoners. The court made the following findings:

"1. That the juvenile had a history of juvenile offenses for curfew violations numbering four.

"2. That the juvenile had been adjudged a delinquent in 1974 for burglary. Said juvenile was sent to the Boys Industrial School in Topeka and released in December 1975.

"3. That the juvenile had been 'A.W.O.L.' while at the Boys Industrial School on two occasions.

"4. Evidence showed also that since his release from the Boys Industrial School he had no further juvenile record until the present charges and that he had never failed to appear at any court proceeding."

The court further found that plaintiff was dangerous to himself and others and that he was being held for his own welfare and protection and that of others because other adequate supervision for him did not exist. Hearing on the merits in the delinquency proceeding was scheduled for June 3, 1977.

On May 31, 1977, an amenability hearing conducted in the district court of Geary county resulted in a finding that plaintiff was not a fit and proper person to be dealt with under the juvenile code and prosecution under the criminal code was directed. This latter action has prompted a suggestion of mootness by the respondent inasmuch as once a juvenile is certified for trial as an adult, he becomes entitled to bail. We deal first with this matter.

The rule is, except in rare instances, appellate courts do not decide moot questions or render advisory opinions (*In re Browning*, 1 Kan. App.2d 652, 573 P.2d 1095). One exception is where a real controversy of statewide importance and interest exists but because of the time required for adequate presentation the question cannot ordinarily be litigated at the appellate level prior to becoming moot (see, *e.g., Smith v. Miller*, 213 Kan. 1, 514 P.2d 377). The case at bar is not an appeal but is an original proceeding which ordinarily can be more speedily processed, but nonethe-

less the issue in it has become academic. We think the same rationale should be applicable in an original proceeding also where, as here, review of an important judicial question, capable of appellate attention, would normally be frustrated by action which ought not be delayed including that of certification of a juvenile for trial as an adult offender in an appropriate case, if the rule of mootness were strictly applied.[1] Hence, we will consider the issue presented.

The eighth amendment to the federal constitution confers no right to bail on anyone, either adult or juvenile. It provides only that bail shall not be excessive. A citizen charged in state courts must rely on his state constitution or statute for bail. Kansas provides for such a right in its constitution:

"All persons shall be bailable by sufficient sureties except for capital offenses, where proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." (Bill of Rights § 9)

The conflict underlying the issue before the court has been described as one of expanding egalitarianism versus the *parens patriae* tradition of the juvenile court system (see Hafen, *Reservations About Children's Rights,* 1976 Brigham Young U.L. Rev. 605, 607). Arguments urging reform—the granting of more extensive procedural protection to juveniles—include: (1) The constitution is silent on age. (2) The purpose of *parens patriae* is to grant the juvenile greater protection than he would experience under the criminal law. Why strip him, then, of those constitutional rights guaranteed adults? (3) In spite of statutory proclamation that juvenile proceedings are civil in nature, the juvenile still is stigmatized with crime when he stands accused of an offense. (4) The juvenile often faces very real "deprivation of liberty," no matter what the euphemistic name given the detention facility. See, Note, *The Right to Bail and the Pre-"Trial" Detention of Juveniles Accused of "Crime,"* 18 Vanderbilt L. Rev. 2096 (1965); Comment, *Juvenile Right to Bail,* 11 Journal Family Law 81 (1971); Comment, *Children's Liberation—Reforming Juvenile Justice,* 21 K.L.R. 177 (1973); Anno. "Juvenile Courts—Right of Bail," 53 A.L.R. 3d 848 (1973).

---

1 It is generally held that a ruling on pretrial bail is not reviewable after trial and conviction (see, *e.g., State v. Sheppard,* 100 Ohio App. 345, 128 N.E.2d 471 [1955], aff'd 165 Ohio St. 293, 135 N.E.2d 340 [1956]).

Kansas has long espoused the *parens patriae* doctrine in dealing with juvenile offenders (see *State v. Fountaine,* 196 Kan. 638, 642-643, 414 P.2d 75, 79), now expressed in K.S.A. 1976 Supp. 38-801 as follows:

"This act [juvenile code] shall be liberally construed, to the end that each child coming within its provisions shall receive such care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state. In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this act, be deemed or held to import a criminal act on the .part of any child; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state."

Our juvenile code specifically provides for pretrial detention. First, K.S.A. 1976 Supp. 38-815(*e*) states that whenever a child under the age of eighteen years is taken into custody by a peace officer and is forthwith taken before the district court, as is required, such child shall not remain in any detention or custody, other than the custody of the parent, guardian or other person having legal custody of the child, for more than forty-eight hours, excluding Sundays and legal holidays, from the time the initial custody was imposed by a peace officer, unless a determination is made, within such forty-eight hour period, as to the necessity for any further detention or custody in a detention hearing as provided in K.S.A. 1976 Supp. 38-815b.

This latter statute prescribes the procedure for a detention hearing, to include appointment of a guardian ad litem, notice of hearing and the like, along with this:

"(*c*) The district court may order temporary custody or detention as provided in K.S.A. 1976 Supp. 38-819, in a detention hearing under this section after determining that: (1) The child is dangerous to self or to others; (2) the child is not likely to appear at a hearing for adjudication on any petition filed pursuant to K.S.A. 1976 Supp. 38-816; or (3) the health and welfare of the child may be endangered without further care.

"(*d*) When the court finds that the continued detention of the child pending adjudication in a hearing on a petition is not required to serve the welfare of the child and the best interests of the state as determined in subsection (*c*) of this section, the court shall order the child's release and in doing so may place the child in the custody of the parent, guardian or other person having legal custody of the child, or a juvenile probation officer, or may impose any other conditions which may be required subject to modification by the court."

K.S.A. 1976 Supp. 38-819 provides: .

"(*a*) Prior to or during the pendency of a hearing on a petition to declare a child

to be delinquent, miscreant, wayward, a traffic offender, a truant or dependent and neglected, filed pursuant to K.S.A. 1976 Supp. 38-816, the district court may order that such child be placed in some form of temporary detention or custody as provided in this section, but only after a determination is made as to the necessity therefor in a detention hearing as provided by K.S.A. 1976 Supp. 38-815b.

"(b) Upon such a determination, the court may make an order temporarily granting the custody of such child to some person, other than the parent, guardian or other person having legal custody, or to a children's aid society, or to a public or private institution used as a home or place of detention or correction, or to the secretary of social and rehabilitation services.

"(c) Upon such a determination, the court may order any such child who is alleged to be a delinquent or miscreant child to be placed in detention in the county jail or police station in quarters separate from adult prisoners. In such cases, the court, if it deems it advisable, may order such child confined in a jail or police station prior to or during the pendency of the hearing on the petition. When such provisions for separate quarters have not been made for the care and custody of the child in such detention, the court may order such child to be kept in some suitable place of detention provided by the county other than the county jail or police station."

Nowhere in our juvenile code is a right to bail prescribed.

The few states which have held that a juvenile has a constitutional right to bail, even though no statute authorizes it, have done so for the reasons indicated under the arguments for reform.

The landmark case in the area of juvenile procedural rights is *In re Gault,* 387 U.S.1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1967). There a fifteen-year-old boy had been committed to a state industrial school for the period of his minority because of an obscene phone call he apparently had made. Procedural safeguards were practically nonexistent throughout the proceedings. Finding that the "unbridled discretion" perpetuated by the *parens patriae* doctrine was often a poor substitute for procedure, the *Gault* court held juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment, including (1) written notice of the charges to the juvenile and his parent; (2) the right to counsel; (3) the application of the privilege against self-incrimination; and (4) sworn testimony with opportunity for cross-examination. (*In re Winship,* 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 [1970], may be said to have added to this panoply a fifth factor—the right to a standard of proof beyond a reasonable doubt.)

Although *Gault* stated "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone" (387 U.S. at 13), it went on to point out that practically all jurisdictions grant certain rights to

adults which are withheld from juveniles. The right to bail was specifically noted among these. While the holding was limited to the facts in the case, the court did state:

". . . We do not mean by this to denigrate the juvenile court process or to suggest that there are not aspects of the juvenile system relating to offenders which are valuable." (*Id.* at 22)

Further:

". . . While due process requirements will, in some instances, introduce a degree of order and regularity to Juvenile Court proceedings to determine delinquency, and in contested cases will introduce some elements of the adversary system, nothing will require that the conception of the kindly juvenile judge be replaced by its opposite, nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child." (*Id.* at 27)

Certainly a wholly informal juvenile process is capable of inviting abuse and certain procedural requirements are necessary to prevent the exercise of "unbridled discretion."

States which have held that a juvenile is not entitled to bail usually have done so under the *parens patriae* doctrine for these reasons: (1) a juvenile does not stand charged with crime; (2) an adequate substitute for bail exists; and (3) traditionally a juvenile is not held to the same standard of individual responsibility for his conduct as is an adult, so adequate reason for different procedures concerning the two classes exists. Our own law and statutes on the subject are compatible with these ideas and they appear sound, particularly the latter two.

Cases which have simply held that a juvenile has not been charged with crime include *In re Castro,* 243 Cal. App. 2d 402, 52 Cal. Rptr. 469; *Baker v. Smith,* 477 S.W.2d 149 (Ky. 1971), 53 A.L.R.3d 843; *Ex Parte Cromwell,* 232 Md. 305, 192 A.2d 775; *Ex parte Newkosky,* 94 N.J.L. 314, 116 A. 716; *State ex rel. Peaks v. Allaman,* 51 Ohio Op. 321, 66 Ohio L. Abs. 403, 115 N.E.2d 849. *Castro* points out that an effective system adhering in part to the underlying theory of juvenile courts could not logically or practically be administered along with the strict procedural exercise of all the constitutional rights accorded adults.

Some courts have found it unnecessary to reach the question whether there is a constitutional right to bail in juvenile proceedings, believing an adequate substitute for bail is provided by the juvenile acts themselves. *In re Castro,* supra; *Baker v. Smith,*

supra; *Fulwood v. Stone,* 394 F.2d 939 (D.C. Cir. 1967); *U. S. ex rel. Burton v. Coughlin,* 463 F.2d 530 (7th Cir. 1972); *Baldwin v. Lewis,* 300 F. Supp. 1220 (E.D. Wis. 1969). In many jurisdictions the judge has the power to turn custody of the child over to the parent or to establish reasonable means for release of the juvenile pending hearing. If parental custody cannot be granted, an appropriate inquiry concerning pretrial custody is made to meet the oft-stated statutory requirement of "equivalent custody" (equivalent to that parents should give).

K.S.A. 38-801 demonstrates legislative intent that no child shall be deemed criminally charged when proceeded against under the juvenile code and our supreme court has so held (*State v. Fountaine,* supra). That code mandates prompt action when prehearing detention is contemplated, with fundamental fairness to be accorded in the detention hearing. Detention is clearly contemplated as a last resort, after certain findings have been made, and no other form of supervised release, including parental custody, is available. When, for want of a better place, detention is to be in a county jail or police station, separation from adult prisoners is required.

Detention in a juvenile proceeding in all instances cannot really be said to be the equivalent of denial of bail for an adult. Criminal bail is to insure presence for trial. A juvenile can be detained for this reason (this was not the purpose in the case at bar). He can also be detained for his own protection or welfare. We think this factor should be an essential finding for prehearing detention under our statutes except where detention is necessary to insure presence for trial. When so detained, he is not really deprived of anything as he, unlike an adult, is already subject to parental or some substituted control. Different treatment of the juvenile from that of an adult is justifiable not because of age, but because of lack of capacity. Care and guidance for juveniles in need is appropriate under our juvenile code both before and after their hearings. An absolute right to bail is inconsistent with this philosophy. "The institution of bail, whereby an arrested person is given an opportunity to buy his release, may be seriously questioned as a rational solution to the problems of prehearing custody, despite its ancient and constitutional lineage. . . Release as of right [of a juvenile arrested for delinquency] plainly may interfere with the protection or care required

in some cases, and availability of freedom should not turn on the ability of the child or his family to purchase it." (Pres. Commission, Task Force Report: Juvenile Delinquency and Youth Crime, p. 36 [1967].)

Our conclusion is that the absence of an absolute right to bail in our juvenile code, and its denial by judicial action after a due process detention hearing, does not contravene section 9 of the Kansas bill of rights nor does it deny due process or equal protection of the laws in violation of the fourteenth amendment to the federal constitution.

Here the detaining court, after notice and hearing, made specific findings including the essential ones that plaintiff was being held for his own welfare and protection and because other means of adequate supervision for him did not exist. The court's evidentiary findings were not overly explicit or detailed factually but they appear sufficient.

The petition is denied.