Edward E. MORRIS

v.

Linda D'AMARIO, Assistant Director for Youth Services.

No. 77-40-M.P.

Supreme Court of Rhode Island.

June 26, 1980.

Richard Casparian, Deputy Public Defender, Mary E. Levesque, Paula Rosin, Asst. Public Defenders, for petitioner.

Dennis J. Roberts II, Atty. Gen., John J. McMahon, Sp. Asst. Atty. Gen., for respondent.

## OPINION

BEVILACQUA, Chief Justice.

On January 4, 1977, Edward E. Morris was referred by the Providence police department to the Family Court as a delinquent within the meaning of G.L.1956 (1969 Reenactment) § 14–1–3(F).[1] Before a justice of that court, Morris pleaded not guilty and requested that he be released on bail pursuant to the Rhode Island Constitution, art. I, § 9. The Family Court justice, however, denied this request and summarily ordered him detained at the Rhode Island Training School for Boys pending the outcome of a show-cause hearing scheduled for approximately one week later. After the show-cause hearing, at which a justice of the Family Court found probable cause to support the delinquency petition against

---

1. General Laws 1956 (1969 Reenactment) § 14–1–3(F) reads as follows:

    "The term 'delinquent' when applied to a child shall mean and include any child—Who has committed any offense which, if committed by an adult, would constitute a felony, or who has on more than one (1) occasion violated any of the other laws of the state or of the United States or any of the ordinances of cities and towns, other than ordinances relating to the operation of motor vehicles."

Morris and then remanded him to the Training School pending a final hearing, Morris petitioned for a writ of certiorari seeking review of the legality of his detention.

The issues raised by this petition are (1) whether a juvenile detained pending final adjudication in the Family Court of the delinquency petition against him is entitled to prehearing bail as a matter of right under art. I, § 9 of the Rhode Island Constitution, (2) whether a probable-cause hearing must be held before a juvenile may be detained, and (3) whether at this hearing he is entitled to the full panoply of minimum due-process rights.

■ An examination of the record indicates to us that the issues presented have become moot. After filing this petition, Morris became ill and was released by the Training School officials after medical personnel had suggested that he be permitted to go home pending final adjudication. As a general rule we only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions. *See, e. g., Perry v. Petit,* 116 R.I. 89, 352 A.2d 396 (1976). This rule is not absolute, however. Although moot, questions of extreme public importance, which are capable of repetition but which evade review, command our attention and will be addressed. *E. g., Mello v. Superior Court,* 117 R.I. 578, 580–81, 370 A.2d 1262, 1263–64 (1977). The questions raised by this petition fall into that class.

## I

■ Morris first argues that juveniles detained pending delinquency proceedings in the Family Court have a right to bail because they are "persons imprisoned"

within the contemplation of R.I.Const. art. I, § 9. Article I, § 9 provides in pertinent part:

"All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great." [2]

This argument is without merit. The right to bail guaranteed by art. I, § 9 extends only to persons imprisoned; juveniles held pending delinquency proceedings are not so detained.

On the contrary, it is well established that in juvenile delinquency proceedings the state, through the Family Court, acts in *parens patriae* rather than as prosecuting attorney and judge.[3] *In re McCloud,* 110 R.I. 431, 434–36, 293 A.2d 512, 515–16 (1972); *accord, Knott v. Langlois,* 102 R.I. 517, 520–22, 231 A.2d 767, 768–69 (1967); *State v. Cook,* 99 R.I. 710, 711–14, 210 A.2d 577, 578–80 (1965); *Givardi v. Juvenile Court,* 49 R.I. 336, 142 A. 542 (1928). The principal concerns of the Family Court when determining the proper disposition of a child pending adjudication of his delinquency are the welfare of the child and the welfare of the community. *See Pauley v. Gross,* 1 Kan.App.2d 736, 739–40, 574 P.2d 234, 237–38 (1977); *State v. Gleason,* 404 A.2d 573, 580–82 (Me.1979); *People ex rel. Wayburn v. Schupf,* 39 N.Y.2d 682, 687–89, 385 N.Y.S.2d 518, 520–522, 350 N.E.2d 906, 908–10 (1976). In deciding who should retain custody of the child, therefore, the court is exercising substitute parental control, not imposing imprisonment. *See Pauley v. Gross,* 1 Kan.App.2d at 742, 574 P.2d at 240; *Baker v. Smith,* 477 S.W.2d 149, 150 (Ky.1971). When the court grants custody

---

**2.** An individual claiming a right to bail must rely on state law. The Federal Constitution does not confer a right to bail on anyone, whether adult or minor. It provides only that bail not be excessive. *City of Warwick v. Robalewski,* R.I., 385 A.2d 669, 670 (1978).

**3.** Indeed, in an attempt to preserve the distinct nature of juvenile proceedings, we have eschewed extending rights guaranteed in criminal prosecutions to juvenile delinquency proceed-

ings so that the ideals of a flexible approach and parental concern might continue to predominate the juvenile inquiry. *See In re Wilkinson,* 116 R.I. 163, 168, 353 A.2d 199, 202 (1976) (R.I. Const. art. I, § 10, right of allocution inapplicable in juvenile proceedings; flexible approach preferred); *In re McCloud,* 110 R.I. 431, 434–36, 293 A.2d 512, 513–16 (1972) (R.I. Const. art. I, § 10, right to trial by jury inapplicable in juvenile proceedings).

of the child to the state, it is placing him in the care of surrogate parents who exercise parental authority, not penal authority; accordingly the right to bail guaranteed to adults, on whom the state cannot impose parental authority, is inapplicable to the Family Court detention decision. *Cf. McKeiver v. Pennsylvania*, 403 U.S. 528, 550–51, 91 S.Ct. 1976, 1989, 29 L.Ed.2d 647, 664 (1971) (Sixth Amendment right to trial by jury inapplicable to juvenile proceedings).

## II

■ Morris also contends that because he was not afforded the same opportunity to post bail as an adult accused of crime, he was denied the equal protection of the laws guaranteed him by the Fourteenth Amendment and the Rhode Island Constitution, art. I, § 10. We reject this argument as well.

■ We agree that a juvenile awaiting a delinquency hearing possesses a fundamental right to liberty. In addition, we do not deny that a prehearing detention imposes constraints on his liberty. Accordingly we are bound to subject the state's placement procedure to strict scrutiny to ascertain whether the state advances a compelling interest in maintaining this procedure and whether the procedure employed is the least restrictive alternative to effectuate its interest.

At the threshold we note that juveniles seeking release pending adjudication are not situated like adults applying for bail pending trial. A child does not have the unqualified right of individual liberty that an adult has because a child is subject to parental control. Therefore, the full basis for bail does not exist with regard to children, for a child released on bail would not gain individual freedom form custody but would simply be restored to parental con-

trol. *Baker v. Smith*, 477 S.W.2d at 151. Adults at liberty on bail are not similarly subject to a parental authority. *See Pauley v. Gross*, 1 Kan.App.2d at 742–43, 574 P.2d at 240; *People ex rel. Wayburn v. Schupf*, 39 N.Y.2d at 688–89, 385 N.Y.S.2d at 520–522, 350 N.E.2d at 909. For this reason, the juvenile seeking pretrial release presents a somewhat different interest to the state than does the adult seeking bail.

The question facing the Family Court when it decides whether a juvenile should be released pending the delinquency hearing is what disposition will best serve the interests of the child and the state. The ability to place a child in an environment providing proper care and guidance is manifestly important to the goal of molding that child into a law-abiding citizen. We believe an absolute right to bail would deprive the Family Court of its needed flexibility of placement. Moreover, under §§ 14–1–20 and 14–1–21[4] the state has implemented the least restrictive placement procedure of all the available alternatives, one that retains, as the Supreme Court has noted, the "substantive benefits of the juvenile process" by preserving a flexible, beneficent approach to juvenile matters. *In re Gault*, 387 U.S. 1, 21, 87 S.Ct. 1428, 1440, 18 L.Ed.2d 527, 543 (1967). Indeed, when properly administered, a flexible placement procedure focusing on the welfare of both the child and the community will best serve the juvenile's emotional and familial needs.

## III

Aside from his claim of an absolute right to bail, Morris argues that the existing placement procedure is devoid of requisite due-process safeguards mandated by the Fourteenth Amendment and art. I, §§ 6 and 10 of our state constitution. Moreover, he contends that the statutory procedure contains insufficient standards to guide the Family Court justice's decision to detain

4. General Laws 1956 (1969 Reenactment) §§ 14–1–20 and 14–1–21 provide three alternative placements of a child taken into custody by an officer. First, the child "may be released in the custody of a parent, guardian, or other custodian." Section 14–1–20. Failing this, "a probation counselor or other person designated by the court" may assume custody of the child. *Id.* Finally, the court itself may take custody of the child or designate another place of detention. Section 14–1–21.

him; Morris suggests that the decision must be based on probable cause.

## A

The landmark case in the area of juvenile procedural rights is the *Gault* case. Finding that unbridled discretion by the courts adjudicating delinquency was often a poor substitute for procedural safeguards, the Court there enumerated certain basic constitutional rights [5] that must be accorded juveniles at the delinquency adjudication hearing. The holding in *Gault*, however, was specifically aimed at ensuring the integrity of the juvenile delinquency adjudication process and was couched in these words:

"We do not mean by this to denigrate the juvenile court process or to suggest that there are not aspects of the juvenile system relating to offenders which are valuable." *In re Gault*, 387 U.S. at 22, 87 S.Ct. at 1441, 18 L.Ed.2d at 543.

Recognizing the value of a separate juvenile justice system premised on the notion of parental guidance, the Court assured the states that:

"While due process requirements will, in some instances, introduce a degree of order and regularity to Juvenile Court proceedings to determine delinquency, and in contested cases will introduce some elements of the adversary system, nothing will require that the conception of the kindly juvenile judge be replaced by its opposite, nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child." *In re Gault*, 387 U.S. at 27, 87 S.Ct. at 1443, 18 L.Ed.2d at 545–46; *accord, McKeiver v. Pennsylvania, supra.*

We therefore conclude that due process does not require that rights similar to those required in the *Gault* context be afforded to juveniles with respect to pre-hearing-pre-detention determinations.

Nevertheless, we believe that the juvenile possesses a liberty interest in the pre-hearing-placement procedure which, consistent with the concept of fundamental fairness pervading each stage of the juvenile process, should not be denied in the absence of minimum due-process safeguards. *In re M.,* 3 Cal.3d 16, 473 P.2d 737, 89 Cal.Rptr. 33 (1970); *cf. Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (students facing temporary suspension from a public school have property and liberty interests that qualify for protection under Due Process Clause of Fourteenth Amendment); *State v. Ouimette,* 117 R.I. 361, 367 A.2d 704 (1976) (prisoners seeking release on parole have liberty interest that qualifies for protection under Due Process Clause of Fourteenth Amendment). Accordingly, we hold that prior to the time the juvenile is presented to the court for placement pending the delinquency adjudication, he and his parents must be notified in writing of the nature and possible consequences of the placement proceedings. We believe that written notice will afford the juvenile and his parent a reasonable opportunity to prepare for the proceedings, thereby safeguarding the child's liberty interest and the parents' custodial interest. *See In re Gault,* 387 U.S. at 33–34, 87 S.Ct. at 1446–47, 18 L.Ed.2d at 549–50. Furthermore, the child and his parents must also be notified that the child has a right to the assistance of counsel at the proceedings and that, if the family is indigent, counsel will be appointed to represent the child. *Id.* at 41, 87 S.Ct. at 1451, 18 L.Ed.2d at 554. If the court determines that detention in the custody of the court will best serve the interests of the child and the community, it must articulate in writing the facts and reasons on which it

---

**5.** *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), held that juvenile adjudication proceedings that may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment, including (1) written notice of the charges to the juvenile and his parent, (2) the right to counsel, (3) the application of the privilege against self-incrimination, and (4) sworn testimony with opportunity for cross-examination. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), may be said to have added to this panoply a fifth factor—the right to a standard of proof beyond a reasonable doubt.

based its decision to detain the juvenile. *See In Re M.*, 3 Cal.3d at 28–29; 473 P.2d at 747, 89 Cal.Rptr. at 42; *In re Macidon*, 240 Cal.App.2d 600, 607, 49 Cal.Rptr. 861, 865–66 (1966); *cf. Kent v. United States*, 383 U.S. 541, 561, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97 (1966); *Knott v. Langlois*, 102 R.I. at 522, 231 A.2d at 769 (written statement of relevant facts as well as reasons motivating court's determination required with respect to waiver of Family Court jurisdiction over minor on a delinquency petition). Finally, a record of the proceedings must be made so that appellate review of the decision might be obtained.

## B

■ We turn next to Morris's contention that the Family Court Act does not provide adequate standards to govern the pre-hearing-detention-determination. At the outset we reject Morris's argument that juveniles facing prehearing detention must be afforded a probable-cause hearing.[6] In light of the state's interest as *parens patriae*, it is sufficient that a child can be detained pending final adjudication only pursuant to a specific order of a Family Court justice following the filing of a formal petition that states plainly the facts bringing the child within the jurisdiction of that court.[7]

■ We also disagree with Morris's argument that the Family Court Act does not contain sufficient guidelines to guide the Family Court's determination of whether an alleged delinquent should be detained pending the delinquency hearing. In § 14–1–2 of the Family Court Act the Legislature has set forth the following principles to guide the Family Court's disposition of all children coming under its jurisdiction:

1. The child shall receive such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state;

2. The child's family ties shall be conserved and strengthened, and except when his welfare or the safety and protection of the public cannot be adequately safeguarded without his removal, he may not be removed from the custody of his parents; and

3. When the child is removed from his own family, the court shall secure for him care, custody and discipline as nearly as possible equivalent to that which should have been given him by his parents.

These principles are applicable to interim as well as final dispositions of children coming under the jurisdiction of the Family Court. Moreover, they serve as adequate guidelines to govern the pre-hearing-detention-determination.

For the reasons stated in Part III A above, the petition for writ of certiorari is granted pro forma, and the papers in the case are remanded to the Family Court with our decision endorsed thereon.

DORIS, J., did not participate.

---

6. The Supreme Court has ruled that even when an individual is arrested and detained pending criminal proceedings "the Constitution does not require an adversary determination of probable cause * * *." *Gerstein v. Pugh*, 420 U.S. 103, 123, 95 S.Ct. 854, 868, 43 L.Ed.2d 54, 71 (1975). The Court, though limiting its holding to the precise requirement of the Fourth Amendment, recognized the desirability of flexibility and experimentation by the States: "It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release." *Id.* at 123–24, 95 S.Ct. at 868, 43 L.Ed.2d at 71 [citation omitted].

7. The Family Court, in deciding whether to invoke formal jurisdiction, authorizes a petition to be filed, alleging that the child is delinquent, wayward, dependent, neglected, or otherwise within the purview of the Family Court Act. General Laws 1956 (1969 Reenactment) § 14–1–11, as amended by P.L. 1977, ch. 67, § 1. Section 14–1–12 dictates that "[t]he petition shall state plainly the facts which bring said child within the provisions of this chapter * * *." The petition must also be sworn to before either justice or clerk of the Family Court. Section 14–1–11.