**STATE**

v.

**Claus von BULOW.**

**No. 82–243–C.A.**

Supreme Court of Rhode Island.

July 6, 1982.

OPINION

KELLEHER, Justice.

The defendant, Claus von Bulow (von Bulow), stands convicted by a Superior Court jury, which returned its verdict after listening to evidence relating to a two-count indictment, each count of which charged von Bulow with assaulting his wife with an intent to murder her. Later, on April 2, 1982, von Bulow's motion for a new trial on both counts was denied. During this period he was allowed to remain free on the $50,-000 surety bail posted for each count at the time he was arraigned. When von Bulow returned to the Superior Court on May 7, 1982, he received a ten-year sentence on the first count and a consecutive twenty-year sentence on the second count. At that time the trial justice rejected the state's request that von Bulow be held without bail pending his appeal. The trial justice set bail at $1 million and allowed von Bulow to execute a personal recognizance but conditioned the grant upon von Bulow's satisfying "the Attorney General and/or the Superior Court that he is the owner and is presently in possession of $1,000,000.00 (One Million Dollars) worth of assets" and agreeing "not to divest himself of any of these assets, without the express approval of the Attorney General and the Superior Court."

Two weeks later, on May 21, 1982, von Bulow, his counsel, and counsel for the state were once again before the trial justice. At that time the trial justice reiterated his willingness to place von Bulow on bail. He noted the receipt of von Bulow's confidential statement of assets. The trial justice also observed that he had permitted von Bulow to post $100,000 as part of the $1 million requirement but again stressed the need of documentation by von Bulow regarding his ownership of an additional $900,000 in assets. In continuing the bail proceeding to June 7, the trial justice remarked, "[I]f on the 7th the State is satisfied, then no further proceeding will be necessary."

When the hearing reconvened on June 7, the trial justice alluded to his previous re-

Dennis J. Roberts, II, Atty. Gen., Stephen R. Famiglietti, Asst. Atty. Gen., for plaintiff.

John F. Sheehan, Providence, Herald Price Fahringer, New York City, for defendant.

luctance to accept $100,000 cash bail as sufficient surety. He also referred to certain inventories that had been submitted to the Attorney General's department as having an alleged value in excess of $2 million. Some of the property listed was located in New York, and other articles were situated in a Newport estate once occupied by von Bulow and his wife. Much of the Rhode Island property, the trial justice said, was "brought to the marriage and * * * enjoyed by the victim and this defendant throughout their married life." After expressing the belief that von Bulow and his attorneys had attempted in good faith to comply with the terms of the recognizance, the trial justice found that the ownership issue was still unresolved. He obviously thought that the point of no return had been reached; and since von Bulow's "right to remain on the street" was keyed to proof of ownership, the trial justice ordered the sheriff to take von Bulow into his custody for his ultimate delivery to the Adult Correctional Institutions. However, von Bulow's counsel was given until 2 p. m. to seek a stay in this court.

The stay was granted, and on June 29, 1982, this court heard arguments relative to the trial justice's actions. The review was sought pursuant to our Rule 9.

■ In faulting the trial justice's action, von Bulow's counsel argue that the trial justice, by accepting the $100,000, representing 10 percent of the scheduled bail, was then foreclosed from insisting on proof of the ownership of another $900,000 in assets. In taking this position, counsel rely upon G.L. 1956 (1981 Reenactment) § 12–13–10, which, in its pertinent portion, allows any person who is "entitled to be released on bail" and who "is held in custody or committed on a criminal charge" to be released on personal recognizance rather than on surety bail by depositing, in cash with the court before which he or she is obligated to appear, 10 percent of the bail that he or she has been ordered to furnish. The 10-percent factor came about as a result of action taken by the General Assembly at its January 1972 session. Public Laws 1972,

ch. 267, § 1. However, § 12–13–10 has been part of the statutory framework concerning the posting of bail since 1915. An examination of chapter 13 of title 12 and its statutory predecessors makes it quite clear that the type of bail referred to in § 12–13–10 is pretrial rather than postconviction bail.

We would also emphasize that von Bulow cannot be considered as a person who comes within the statutory classification of one who is "entitled to be released on bail" because in *Quattrocchi v. Langlois*, 100 R.I. 741, 219 A.2d 570 (1966), this court pointed out that the constitutional guarantee of the right to bail found in art. I, sec. 9, of our State Constitution is applicable only to pretrial bail and is of no assistance to a convicted felon who seeks to have bail set pending appellate review of his conviction. Additionally, the Federal Constitution does not guarantee a right to bail, but it does bar the imposition of excessive bail. *Morris v. D'Amario*, R.I., 416 A.2d 137 (1980). Postconviction bail is not a matter of entitlement but is an issue that is directed to the sound discretion of the trial court.

■ At oral argument the state, through its assistant attorney general, told us that von Bulow had never convinced the Department of the Attorney General that he in fact was the owner of the property that he claimed was his. As noted earlier, the trial justice was of the mind that if von Bulow convinced the department, the bail issue would be resolved. However, the discretion that is involved in a postconviction-bail controversy is that of a Superior Court justice rather than that of the prosecutor.

An adequate review of what occurred in the postconviction facet of this controversy is well nigh impossible because much of what was relied on by the trial justice apparently came to him by way of "confidential information," in-chambers meetings, or the prosecutor's protestations that he was not convinced of the validity of von Bulow's ownership claims. There is nothing in this record that would indicate what happened when the representatives of the Attorney General attempted to determine the legiti-

macy of von Bulow's alleged ownership of assets that were set forth on what still is an undisclosed list.

In light of the present state of the record, a remand is necessary. In remanding the bail controversy to the Superior Court, it is vital that questions concerning ownership and assets be thrashed out in open court where a record can be established. As will be seen, the remand hearing should be held by someone other than the trial justice.

At the June 7, 1982 hearing, the trial justice announced that earlier he had informed counsel that he had "little respect for the defendant." This attitude apparently was motivated by information furnished to the trial justice after trial but before imposition of sentence in a presentence report prepared by the Probation Department. In our opinion, such negative sentiments are sufficient cause for us to direct the Presiding Justice of the Superior Court to designate a different trial justice to preside at the remand hearing.

In conclusion, we would emphasize that the single issue on remand is whether von Bulow satisfies the factfinder that he does indeed own $900,000 worth of either tangible or intangible assets and that proper steps can be taken so that the assets will be preserved during the pendency of the appeal.

The case is remanded to the Superior Court for a further hearing that shall be held forthwith and in compliance with the dictates of this opinion. Jurisdiction for appellate purposes is retained by this court.