**PUBLIC SERVICE EMPLOYEES' UNION, LOCAL 1033, LIUNA, AFL–CIO et al.**

v.

**The CITY OF CRANSTON et al.**

No. 2003–574–Appeal.

Supreme Court of Rhode Island.

Dec. 8, 2008.

Donald Iannazzi, for Plaintiff.

Frederic Marzilli, East Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**O P I N I O N**

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 22, 2008, on an appeal by the defendant, the City of Cranston (city or Cranston), from a Superior Court order entered in favor of the plaintiff, Public Service Employees' Local Union 1033, LIUNA, AFL–CIO (union or Local 1033), permanently enjoining the city from imposing layoffs of crossing guards until a final and binding arbitration award is issued.

The facts in this case largely are undisputed. The parties entered into a collective-bargaining agreement that was effective from July 1, 2001, through June 30, 2004. However, at the behest of the then-mayor, John O'Leary, the parties entered into further negotiations that culminated in a new collective-bargaining agreement (CBA) effective July 1, 2002, through June 30, 2005. In this CBA, that was ratified by the Cranston City Council (city council), the city agreed "not to layoff or furlough any bargaining unit member and * * * to maintain not less than thirty-nine (39) crossing posts staffed by [thirty-nine] bargaining unit employees." In exchange for this "no-layoff" provision, the union agreed to a wage freeze for 2002 and to forgo the members' uniform allowance.

In January 2003, Stephen P. Laffey (Laffey) became Cranston's new mayor. Laffey sought additional changes in the CBA, and asked Local 1033 to renegotiate its terms. When this proved unavailing, Laffey proposed a budget that deleted all funding for crossing-guard services for the 2004 fiscal year. The city found a private contractor capable of providing expanded services for a fraction of the cost of the existing municipal program. The city council voted unanimously to cut funding for the crossing guards. As a result, on July 22, 2003—a year into the CBA—the city laid off all remaining crossing guards.[1]

In response, Local 1033 filed a grievance against the city alleging that the layoffs violated the CBA; the city denied the grievance and Local 1033 demanded that the dispute proceed to arbitration. Additionally, the union filed a verified complaint in Superior Court against the city, Laffey, and members of the city council, seeking injunctive relief and an order directing the city to comply with the CBA. On September 5, 2003, the hearing justice granted a permanent injunction in favor of Local 1033, enjoining the city from imposing layoffs for the crossing guards "until such time as an [a]rbitrator issues a final and binding award regarding the underlying collective bargaining controversy." Additionally, the hearing justice granted the union's request under Rule 65 of the Superior Court Rules of Civil Procedure to consolidate the proceeding for injunctive relief with a hearing on the merits. The city filed a timely notice of appeal to this Court.

In the meantime, the grievance proceeded to arbitration. The arbitrator issued an award in favor of Local 1033, concluding that the city had violated the CBA when it attempted to lay off the crossing guards.[2] The city now asks this Court to vacate the injunction; however, we decline to address the merits of this controversy because we are satisfied that this case is moot. It manifestly is apparent that the litigants before us no longer possess a stake in the outcome of this litigation. "A case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." *Seibert v. Clark*, 619 A.2d 1108, 1110 (R.I. 1993). "As a general rule we only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions." *Morris v.*

---

1. The record reflects that thirteen of the original thirty-nine crossing guards had retired.

2. The city appealed the arbitration award to the Superior Court, where a judgment was entered vacating the award on January 18, 2005. Local 1033 appealed to this Court; the appeal was not consolidated with the present case. For the decision concerning Local 1033's appeal, see *City of Cranston v. Rhode Island Laborers' District Council, Local 1033*, 960 A.2d 529, 2008 WL 5122897 (R.I.2008).

*D'Amario,* 416 A.2d 137, 139 (R.I.1980). An exception exists, however, in cases "of extreme public importance, which are capable of repetition but which evade review." *Arnold v. Lebel,* 941 A.2d 813, 819 (R.I.2007) (quoting *Morris,* 416 A.2d at 139).

The injunction in this case expired in accordance with its own terms when the arbitration award was issued. The members of Local 1033 were not laid off during the interregnum and suffered no monetary loss. Thus, there is no injunction in place from which this Court could grant relief, nor are we persuaded that this case involves an issue of extreme public importance that potentially could evade review.[3] *See In re New England Gas Co.,* 842 A.2d 545, 553–54 (R.I.2004) (because the underlying labor dispute settled while petition for relief was pending in this Court the case was moot); *Sullivan v. Chafee,* 703 A.2d 748, 753 (R.I.1997) (the question of which budget and tax rate were operable for the 1997 fiscal year was deemed moot after the year in question had ended); *Town of Scituate v. Scituate Teachers' Association,* 110 R.I. 679, 683–84, 296 A.2d 466, 468–69 (1972) (because the collective-bargaining agreement that was the subject of a contract dispute had expired, the case was deemed moot).

For the aforementioned reasons, the appeal is denied and dismissed, and the record shall be remanded to the Superior Court.

---

3. During oral arguments, the city contended that it suffered a compensable loss when it was forced to pay for the services rendered by the crossing guards during the period of the injunction. We decline to disgorge the wages of these individuals who performed their duties, earned their pay, and received that for which they bargained.